510 So.2d 419 (1987)
TOWN OF HOMER, et al., Plaintiffs-Appellees,
v.
LOUISIANA WORKERS' COMPENSATION SECOND INJURY BOARD, Defendant-Appellant.
No. 18709-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for plaintiffs-appellees, Town of Homer and Louisiana Mun. Risk Management Agency.
William J. Guste, Jr., Atty. Gen. by Yolanda R. Johnson, Baton Rouge, for defendant-appellant, State.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
This appeal arises as a result of a trial court judgment against the Louisiana Workers' Compensation Second Injury Board and in favor of the Town of Homer and its insurer. That judgment reversed a decision of the Second Injury Board denying reimbursement of compensation benefit payments to an employee of the town under LSA-R.S. 23:1221 and LSA-R.S. 23:1378. The Second Injury Board appeals the adverse judgment. We affirm.

FACTS
The parties in this action have stipulated to all facts. Basically, these stipulations show that in 1970, while in the course and scope of his employment with the Town of Homer, Rochell Cooper ruptured a lumbar intervertebral disc which ultimately required surgery. The parties further stipulated that the Town of Homer was aware that this injury left Mr. Cooper with a resultant permanent partial disability of such seriousness as to constitute a hindrance to his continued employment. Nevertheless, Mr. Cooper was continued as an employee of the town. Subsequently, on October 21, 1983, while in the course and scope of his employment, he suffered a second back injury which again required surgery for a herniated lumbar disc.
The parties agree that this disability caused by the second accident has "merged" with the disability from the first accident thereby causing a combined disability substantially greater than that which would have resulted had Mr. Cooper not suffered from the pre-existing permanent partial disability. It was also stipulated that the Louisiana Workers' Compensation *420 Second Injury Fund claim was timely filed.
Further, the parties stipulated that prior to the filing of the instant claim the Second Injury Board printed a pamphlet entitled "The Louisiana Workers' Compensation Second Injury Fund" which was attached to and made a part of the stipulation. Finally, the parties stipulated that prior to July 1, 1985, the effective date of the "new Workers' Compensation Act," that it was the policy of the Second Injury Board to reimburse an employer for all compensation benefits paid, including those benefits paid in a court-approved compromise settlement. It was also stipulated that medical benefits were not subject to reimbursement at that time.[1]
The town presented the claim to the Second Injury Board for reimbursement showing that it had paid $8,998.54 in temporary total disability benefits and medical benefits in the amount of $16,389.03 to Mr. Cooper. The Second Injury Board denied reimbursement. In so doing, the Board acknowledged that plaintiffs had presented facts which would satisfy the four statutory prerequisites for reimbursement from the fund. However, the Board claimed that plaintiffs had not shown that it had paid any of those compensation benefits listed in LSA-R.S. 23:1378(A), (1), (2) or (3); namely, supplemental earnings benefits, permanent partial disability benefits, permanent total disability benefits or death benefits. In other words, the Board denied reimbursement of temporary total benefits paid by the plaintiffs because they were not listed in Section 1378. The Board further denied reimbursement of medical expenses asserting that Section 1378(A)(4) requires that supplemental earnings benefits, permanent total disability or death benefits be paid under Section 1378(A)(1) through (3) before an employer is entitled to reimbursement of medical expenses.
On September 4, 1985, after this matter was lodged in the trial court, the Town of Homer and its insurer compromised Mr. Cooper's worker's compensation claim arising from the accident. A copy of the court-approved settlement was offered into evidence. That exhibit shows that the plaintiffs paid Mr. Cooper $13,750.00 in what was categorized as supplemental earnings benefits and $13,750.00 in future medical benefits for release of all claims.
The trial court determined that the Town of Homer was entitled to reimbursement of medical expenses, concluding that payment under subsections (1), (2) or (3) of LSA-R.S. 23:1378(A) was not a prerequisite to recovery under subsection (4) of the statute. The court also condemned the Board to pay sixty (60%) percent of the supplemental earnings benefit awarded to Mr. Cooper by the Town of Homer in the compromise settlement, together with one-half of the first $10,000.00 in medical expenses, the remaining medical expenses actually expended, and $13,750.00 of future medical awarded in the compromise settlement.
The Board's primary contention on appeal is that it is not obligated to reimburse an employer for future medical and future supplemental earnings benefits paid in a compromise settlement. The Board also contends that if no other benefits are subject to reimbursement, an employer is not entitled to be reimbursed for medical expenses. Finally, the Board argues that its pamphlet entitled "The Louisiana Workers' Compensation Second Injury Fund" does not constitute a legal interpretation of all requirements for reimbursement from the Second Injury Fund.[2]
The facts of the case having been stipulated, we are faced only with issues of law involving the application of LSA-R.S. *421 23:1378, which at the time of the instant injury stated in pertinent part:
§ 1378. Determination of liability of fund
A. An employer under this Chapter who knowingly employs or knowingly retains in his employment an employee who has permanent partial disability, as defined in Subsection (F) hereof, shall be reimbursed from the Second Injury Fund as follows:
(1) Supplemental earnings benefits or permanent partial benefits. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) hereof, supplemental earnings benefits or permanent partial benefits, pursuant to R.S. 23:1221(3) or (4), the employer shall pay all benefits provided in this Chapter, but such employer shall be reimbursed from the Second Injury Fund for sixty percent of all benefits which the employer has been required to provide pursuant to R.S. 23:1221(3) or (4).
(2) Permanent total disability. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) of this Section, to cause permanent total disability, the employer shall pay all benefits provided by this Chapter, but such employer shall be reimbursed from the Second Injury Fund for all compensation in excess of the first one hundred four weeks of disability compensation.
(3) Death benefits....
(4) An employer entitled to reimbursement from the Second Injury Fund shall be reimbursed from said fund for fifty percent of the first ten thousand dollars paid for necessary medical, surgical, and hospital services and medicine for the same injury; thereafter, the employer shall be reimbursed from said fund for all sums paid pursuant to R.S. 23:1203 for necessary medical, surgical, and hospital services and medicine.
....
F. As used in this Part, permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.
....[3]

FUTURE BENEFITS PAID BY COMPROMISE
The Board strenuously contends that LSA-R.S. 23:1222 precludes payments of *422 supplemental earnings benefits in a compromise settlement. Thus, the Board contends that these benefits are not subject to reimbursement because, under the wording of the statute, they may not be paid before they are due. Furthermore, the Board argues that since supplemental earnings benefits are not available, in accordance with the strict wording of the statute, then medical benefits are likewise not subject to reimbursement.
LSA-R.S. 23:1222 provides:
§ 1222. Probable duration of disability not basis for award
Supplemental earnings benefits shall not be awarded or payable for probable duration of loss of wages.
At this juncture we must confess that we are uncertain as to exactly what the import of this section is. At first impression it seems that the section is intended to preclude a court or the administrator from awarding prospective supplemental earnings benefits which an employee proves to be then due. However, such an interpretation is contrary to the obvious fact that the workers' compensation law contemplates the resolution of disputes either by the administrator or a court, which resolution would seem to necessarily involve the awarding of supplemental earnings benefits for the future. Also, Section 1221(3), which establishes the nature of disability compensation benefits payable under our law, seems to contemplate the payment of supplemental earnings benefits over a period of time. Perhaps the section simply means that a future award of supplemental earnings benefits may not be made by the administrator or the court for a specific period of time, but that such an award is to be valid until terminated by the provision of Section 1221(3)(d), which establishes certain periods for payment of supplemental earnings benefits.
The foregoing notwithstanding, we are of the opinion that the section is not applicable to compromise settlements. If such were intended, we believe the provision would have been included in the section of the workers' compensation law dealing with compromise settlements, LSA-R.S. 23:1271, et seq.[4] Moreover, Section 1222 does not state that supplemental earnings benefits cannot be subject to a compromise agreement.
Nevertheless, even if supplemental earnings benefits cannot be paid in a compromise agreement, the sum paid in compromise in the instant case must, by definition, be either permanent total benefits or permanent partial benefits (for anatomical loss of use or amputation). In other words, Section 1221 provides payment for the following disability benefits only: (1) temporary total, (2) permanent total, (3) supplemental earnings benefits, and (4) permanent partial disability (anatomical loss or amputation). Temporary total benefits by definition are not applicable because in order to compromise a claim, the worker's temporary total disability must have ended at least six months prior to the settlement. LSA-R.S. 23:1271(A)(3). Thus, if by definition supplemental earnings benefits are also not available, as the defendant here argues, then any sum paid in compromise must be either permanent total benefits or permanent partial disability benefits (anatomical loss or use or amputation).[5]
Said another way, even if supplemental earnings benefits may not be the subject of a compromise settlement, then the funds which were labeled as being paid for such in this case must have been permanent total benefits (and medical benefits). Under appellant's argument, these benefits would be subject to reimbursement.
Therefore, appellant can only win if compromise benefits per se are unavailable for reimbursement under Section 1378 as it existed at the time of this accident. We discern nothing in that section which precludes the payment of compromise benefits. Furthermore, there is a stipulation in this case that the Board routinely paid compromise *423 benefits until the act was amended in 1983. Our comparison of the pertinent wording of the section at the time of the accident (as previously set out in this opinion) with the wording prior to the 1983 amendment (as set out in footnote 1 herein) causes us to discern no change indicating a legislative intent that compromise benefits should not be reimbursable. Moreover, the defendant has pointed to no such language in the 1983 amendment.
In summary, we determine that Section 1222 does not preclude the payment of supplemental earnings benefits in a compromise settlement. Additionally, even if it does, the sum paid by compromise must represent some other type of benefit under the terms of Section 1221. Further, we find nothing that precludes the repayment of benefits properly paid under Section 1221 by compromise. We are thus of the view that the benefits labeled supplemental earnings benefits in the instant compromise settlement are subject to reimbursement to plaintiffs under the 1983 amendments to Section 1378.[6]
This resolution thus precludes a consideration of defendant's other contentions. As the benefits at issue are subject to reimbursement, the defendant's contention that the plaintiffs are not entitled to be reimbursed for medical expenses because Section 1221 benefits were not paid need not be considered because we have held that benefits other than medical benefits were paid. This resolution also makes a consideration of the import of defendant's pamphlet unnecessary.
The judgment appealed is affirmed at appellant's costs so far as these costs may be charged against the state by law.
AFFIRMED.
NOTES
[1] Prior to the 1983 amendments, the wording of Section 1378 allowed reimbursement from the Second Injury Fund for death benefits and "all compensation provided in this Chapter" (after 104 weeks of payments). Thus, medical expenses were not listed as a reimbursable expense at that time. They were added by the 1983 amendment and are currently listed after the 1985 amendment.
[2] Appellant also contends that the Board has no authority to reimburse an employer for temporary total benefits. However, the judgment did not award any sum as reimbursement of temporary total benefits and the employer has specifically stated in brief that it does not seek such reimbursement. Thus, we do not consider this contention to be a viable issue in this cause.
[3] This section was amended by Act No. 697 of 1985, effective October 1, 1985. The amendment was specifically stated not to be retroactive. The section now reads in pertinent part:

§ 1378. Determination of liability of fund
A. An employer operating under the provisions of this Chapter who knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability, as defined in Subsection F hereof, shall be reimbursed from the second injury fund as follows:
(1) If such an employee who has a permanent partial disability incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability, the employer or, if insured, his insurer, in the first instance, shall pay all compensation provided in this Chapter, but the employer or, if insured, his insurer thereafter shall be reimbursed from the second injury fund for all weekly compensation payments payable after the first one hundred and four weeks of payments.
....
(3) If such an employee who has a permanent partial disability incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability, the employer or, if insured, the insurer, shall be reimbursed from the second injury fund for medical expenses actually paid and payable in accordance with R.S. 23:1203 as follows:
(a) Fifty percent of all reasonable and necessary medical expenses actually paid, which exceed five thousand dollars but are less than ten thousand dollars.
(b) One hundred percent of all reasonable and necessary medical expenses actually paid and payable, which exceed ten thousand dollars.
(4) No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee's preexisting permanent partial disability prior to the subsequent injury.
[4] We so state being well aware that under Section 1271 compromise settlements are currently not favored.
[5] Of course, under the instant facts permanent partial disability (anatomical loss of use or amputation) is not appropriate.
[6] The defendant-appellant does not attack the quality of the compromise which was entered into between the injured employee and these plaintiffs.