535 So.2d 474 (1988)
NATIONAL UNION FIRE INSURANCE COMPANY
v.
LOUISIANA WORKERS' COMPENSATION SECOND INJURY BOARD.
No. CA 87 1244.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Rehearing Denied January 10, 1989.
*475 H. Alston Johnson, III, Baton Rouge, for plaintiff-appellee Nat. Union Fire Ins. Co.
Oliver Williams, Baton Rouge, for defendant-appellant Louisiana Workers' Compensation Second Injury Bd.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This is an action by a workers' compensation insurer against the Louisiana Workers' Compensation Second Injury Board (Board) which initially sought reimbursement for temporary total disability benefits, medical expenses and a lump sum compromise, all of which were paid to, or on behalf of, an injured worker by the insurer. The Board denied the claim. The insurer appealed to the district court for a trial de novo. La.R. S. 23:1378(E). The insurer moved for a summary judgment in the district court, based on a joint stipulation of facts. The district court rendered a judgment which denied reimbursement for the temporary total disability benefits claim and granted reimbursement for the medical expenses and lump sum compromise claims.[1] The Board took this suspensive appeal.

FACTS
The parties stipulated to the following facts:
1. On September 13, 1984, James Simpson was employed by Sante Fe Offshore Construction Company, and slipped and twisted his left knee in a work-related incident.
2. Santa Fe had knowingly retained Simpson in its employ after an earlier injury during his work for Santa Fe on April 17, 1982, also to his left knee, which left him with a 5% to 10% disability of the left knee.
3. Santa Fe retained Simpson in its employ after the first injury with full knowledge that his condition was such as to be a permanent partial disability and a hindrance to employment under La.R.S. 23:1378(F).

*476 4. The September 13, 1984 injury to Simpson merged with the pre-existing permanent partial disability to cause materially and substantially greater injury then would have been the case had the pre-existing disability not existed.
5. National Union Fire Insurance Company insured Santa Fe Offshore Construction against compensation claims, and paid the following amounts to Simpson or on his behalf:
(a) from October 1, 1984 through January 20 20, [sic] 1985, $3,735.44 as temporary total disability benefits;
(b) medical expenses in the amount of $4,067.65; and
(c) $7,500.00 in a compromise and lump sum settlement of his claim, approved by the Office of the Director of Workers' Compensation.
6. The defendant Board, upon timely request by plaintiff National Union, denied any reimbursement whatsoever for the amounts paid as indicated above.
7. The following documents are authentic, and the person or persons who prepared them would testify as to their accuracy as to the information contained within them:
(a) the decision of the Second Injury Fund Board, dated March 10, 1986 (Attachment A); and
(b) copy of the compromise and lump sum settlement judgment, dated September 5, 1985.
The decision of the Board, attached to this stipulation, shows that Simpson was treated by Dr. A.D. Walker, and, on December 17, 1984, Dr. Walker found that Simpson had obtained maximum medical benefit and recommended that Simpson be assigned to a less strenuous job due to limitations of his left knee.

REIMBURSEMENT FOR LUMP SUM COMPROMISE
The Board contends the "trial court erred in awarding Appellee reimbursement for funds expended in its compromised, lump sum settlement." The Board asserts La.R.S. 23:1378 provides for the exclusive method of reimbursement by the Board, and this statute does not provide for reimbursement for compromised claims.
At all times pertinent hereto,[2] La.R.S. 23:1378(A) provided as follows:

*477 An employer operating under this Chapter who knowingly employs or knowingly retains in his employment an employee who has permanent partial disability, as defined in Subsection (F) hereof, shall be reimbursed from the Second Injury Fund as follows:
(1) Supplemental earnings benefits or permanent partial benefits. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) hereof, supplemental earnings benefits or permanent partial benefits, pursuant to R.S. 23:1221(3) or (4), the employer shall pay all benefits provided in this Chapter, but such employer shall be reimbursed from the Second Injury Fund for sixty percent of all benefits which the employer has been required to provide pursuant to R.S. 23:1221(3) or (4).
(2) Permanent total disability. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) of this Section, to cause permanent total disability, the employer shall pay all benefits provided by this Chapter, but such employer shall be reimbursed from the Second Injury Fund for all compensation in excess of the first one hundred four weeks of disability compensation.
(3) Death Benefits....
(4) An employer entitled to reimbursement from the Second Injury Fund shall be reimbursed from said fund for fifty percent of the first ten thousand dollars paid for necessary medical, surgical, and hospital services and medicine for the same injury; thereafter, the employer shall be reimbursed from said fund for all sums paid pursuant to R.S. 23:1203 for necessary medical, surgical, and hospital services and medicine.
Under this statute, reimbursement can be made for payments of supplemental earnings, permanent partial, permanent total or death benefits. If reimbursement is made for any one of these, the claimant can also get reimbursement for medical expenses. Although the statute does not specifically provide for reimbursement of compromised claims, it makes no distinction between compromised and uncompromised claims, and we perceive no valid reason to make such a distinction. The public policy behind allowing reimbursement for second injury claims is to encourage employment of handicapped workers. W. Malone and H. Johnson, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise § 234, pp. 498-507 (2nd ed. 1980). That public policy is served by allowing payment for compromised (as well as uncompromised) reimbursable claims. Further, it has long been the public policy of this state that the compromise of disputes are highly favored. St. Romain v. Lambert, 521 So.2d 618 (La.App. 1st Cir.), writ denied, 523 So.2d 233 (La.1988). For these reasons, and for the reasons set forth in Parish Government Risk Management Agency v. La. Workmen's Compensation Second Injury Board, 524 So.2d 267 (La. App. 5th Cir.1988) and Town of Homer v. Louisiana Workers' Compensation Second Injury Board, 510 So.2d 419 (La.App. 2nd Cir.1987), the fact that an otherwise reimbursable claim is compromised does not preclude its payment by the Board.
This matter is before us on a motion for summary judgment. A litigant is entitled to summary judgment in his favor if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the litigant is entitled to judgment as a matter of law. La.C.C.P. art. 966. The trial of the motion for summary judgment was de novo in the district court and was based on a joint stipulation of facts.
The fact that a claim is compromised does not make it reimbursable by the Board; the compromised claim must be one for which reimbursement is authorized by La.R.S. 23:1378. Reimbursable claims are those for supplemental earnings, permanent partial, permanent total disability and death benefits, and medical expenses, if such benefits are payable. Benefits for temporary total disability were not reimbursable at all times pertinent hereto. Employers National Insurance Company *478 v. Louisiana Worker's Compensation Second Injury Board, 533 So.2d 152 (La.App. 1st Cir.1988).
Simpson obviously did not compromise a death benefit claim. Simpson did not compromise a temporary total disability benefit claim. Simpson was paid temporary total disability benefits from October 1, 1984, through January 20, 1985. On December 17, 1984, his doctor determined he had reached maximum medical recovery and released him to return to work with limited duties. For Simpson to have a temporary total disability, he had to be unable to engage in any self-employment or gainful occupation for wages. La.R.S. 23:1221(1). After December 17, 1984, Simpson was able to return to some types of employment and was no longer totally disabled. For this same reason, after December 17, 1984, Simpson did not have a permanent total disability claim either. La. R.S. 23:1221(2).
Thus, after December 17, 1984, Simpson was entitled either to permanent partial disability benefits, La.R.S. 23:1221(4), or supplemental earnings benefits, La.R.S. 23:1221(3), or he was entitled to no benefits at all. The joint stipulation of facts does not contain sufficient facts to show which of these factual alternatives actually existed. However, the joint stipulation of facts does show that on September 5, 1985, the Director of the Office of Workers' Compensation Administration determined that the compromise agreement was "fair and equitable and does substantial justice to the parties and was entered into to avoid litigation" and approved it. La.R.S. 23:1271 et seq.; W. Malone and H. Johnson, supra, § 387, pp. 272-281.
Pursuant to La.R.S. 23:1272, the Director could only legally approve the compromise if it was fair, equitable and consistent with the principles of the workers' compensation law. The Board does not contest the validity of this decision in these proceedings.[3] In this procedural posture, we must rely on the rebuttable presumption that the Director properly performed his duty (La.R.S. 15:432), and that there were bona fide disputes between the parties about the employer's and the insurer's liability to Simpson and/or the nature, extent and duration of Simpson's disability. Since, under the facts of this case, the only types of disability benefits that Simpson could recover were those for which reimbursement by the Board were authorized, and under either type of benefit the amount of reimbursement (60%) was the same, we conclude that this compromise involved a reimbursable claim, and the district court correctly granted judgment therefor.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The Board is cast for all costs of $416.90.
AFFIRMED.
NOTES
[1] Pursuant to La.R.S. 23:1378(A)(1), the insurer was to be given 60% of $7,500 or $4,500, and, pursuant to La.R.S. 23:1378(A)(4), it was to be given 50% of $4,067.65 or $2,033.87, for a total of $6,533.87. However, the judgment gave an award of $6,538.82.
[2] The Louisiana Workers' Compensation Law was extensively amended effective July 1, 1983, and was substantially amended again effective October 1, 1985. Those amendments, as they affected the Board, were discussed in W. Malone and H. Johnson, supra, § 234, pp. 74 pocket part as follows:

The amendments wrought by Act 1 of the 1983 Extraordinary Session had adjusted slightly the reimbursement amounts for employers under the Second Injury Fund. Though technically flawed in drafting, Section 1378(A)(1) was probably intended to grant to an eligible employer a reimbursement of 60% of supplemental earnings benefits or permanent partial benefits paid to an employee whose previous disability merges with a compensable disability entitling him to those benefits. There was no substantive change in Section 1378(A)(2), calling for reimbursement for all benefits after 104 weeks, except that it was limited to cases resulting in permanent total disability.
There was a re-wording of Section 1378(A)(3) without apparent substantive change, entitling the employer to reimbursement for death benefits after the first 175 weeks of payment.
And, for the first time, there was authority for reimbursement of medical expenses at the rate of 50% of the first $10,000 so paid and 100% of all sums for medical expenses over that amount.
There must have been some dissatisfaction with the change effected by the 1983 amendments, either because of the technical drafting problem or because of the inconvenience of dealing in different ways with different types of disability. Amendments in the 1985 legislative session restored the provisions relating to the Second Injury Fund to their language prior to the 1983 amendments. Thus the discussion of the right to reimbursement contained in the Main Volume with respect to reimbursement of disability payments is again current law: assuming all other requirements are satisfied, the reimbursement will be for all "disability" payments beyond the first one hundred and four weeks.
There were no changes in 1985 in the provisions for reimbursement of death benefits, and the reimbursement of medical expenses as enacted in the 1983 amendments was retained. [Footnote omitted.]
See also, H. Johnson, Bound in Shallows and Miseries: the 1983 Amendments to the Workers' Compensation Statute, 44 La.L.Rev. 669, 715-716 at n. 146 (1984).
[3] We do not wish to imply that the Board has the authority to contest the validity and/or the terms of the settlement. That issue was not presented in this case and has not been ruled upon.