CARTER, Judge.
This appeal arises from the trial court’s judgment holding that plaintiffs are entitled to reimbursement from the Louisiana Worker’s- Compensation Second Injury Board (Board) for compensation benefits paid to an employee.
FACTS
James Payton, an employee of plaintiff Owens Plumbing & Heating, Inc. (Owens), was injured on May 1, 1981, while in the course and scope of his employment with Owens. Prior to his employment with Owens, Payton had undergone a lumbar disc fusion in 1973.[1] Owens became aware of Payton’s preexisting condition sometime during Payton’s eight-year period of employment with Owens, but prior to his May 1, 1981, injury. The second injury “merged” with the preexisting permanent partial disability, causing a materially and substantially greater injury than would have resulted from the subsequent injury alone.[2]
American Motorists Insurance Company (American), plaintiff and Owens’ worker’s compensation insurer, paid Payton the following compensation benefits as a result of his work-related injury:
(1) worker’s compensation benefits of $28,826.40;[3]
(2) medical benefits of $22,319.10; and
(3) lump sum settlement of $75,000.00.
On December 22, 1981, American and Owens filed a claim for reimbursement of worker’s compensation and medical benefits and the lump sum settlement from the Board pursuant to LSA-R.S. 23:1378. Following a hearing, the Board denied all reimbursement. On January 8, 1987, American and Owens filed a petition for judicial review with the Twenty-Second Judicial District Court. The matter proceeded to trial on October 8, 1987.
On the morning of trial, American and Owens requested a continuance on the grounds that a material witness, James Payton, although served with a subpoena, failed to appear for trial. The Board opposed the continuance and requested that the court hold Payton in contempt. Thereafter, the trial judge issued a warrant for the attachment of Payton and passed the case on the docket.[4] Later during the af *597 ternoon, Payton appeared before the court, but the attorney for the Board and two other witnesses who were present earlier had disappeared.[5] After ascertaining that American and Owens were ready to proceed with the trial, the trial court held a trial of the matter.
Thereafter, the trial judge rendered judgment in favor of American and against the Board for $103,827.28, less 104 weeks of compensation benefits at $156.67 per week, or $87,533.60, which was signed on November 23, 1987.[6] From this adverse judgment, the Board appeals, assigning the following errors:
I. The trial court erred in conducting the trial after passing the case due to the absence of a material subpoenaed witness.
II. The trial court erred in holding the benefits paid pursuant to a compromised settlement were reimbursable by the Second Injury Board.
III. The trial court erred in holding that benefits paid for medical expenses were reimbursable by the Second Injury Board.[7]
IV. The trial court erred in holding that benefits paid as “temporary total” benefits were reimbursable by the Second Injury Board,
V. The trial court erred in holding that the employer, Owens Plumbing & Heating, Inc., had knowledge of its employee’s prior partial disability,
CONTINUANCE
The Board contends that the trial court erred in conducting the trial after passing the case due to the absence of a material, subpoenaed witness. The Board reasons that the absence of a material witness mandates the granting of a continuance.
LSA-C.C.P. art. 1602 provides:
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; 'or that a material witness has absented himself without the contrivance of the party applying for the continuance.
Once the grounds listed in LSA-C. C.P. art. 1602 are met, the granting of a continuance is mandatory. Herb’s Machine Shop, Inc. v. John Mecom Compa *598 ny, 426 So.2d 762 (La.App. 3rd Cir.1983), writ denied, 430 So.2d 98 (La.1983); Brown v. Lykes Brothers Steamship Company, Inc., 422 So.2d 213 (La.App. 4th Cir.1982); Sather v. White, 388 So.2d 402 (La.App. 1st Cir.1980). Several conditions must be met, however, before LSA-C.C.P. art. 1602 will be applied. The material witness must have absented himself contrary to the wishes of the party seeking the continuance. It must also be shown that the witness is material or essential to that party’s presentation of his case. Additionally, the party requesting the continuance must have exercised due diligence, yet been unsuccessful, in obtaining the material evidence. Herb’s Machine Shop, Inc. v. John Mecom Company, supra; Brown v. Lykes Brothers Steamship Company, Inc., supra; Sather v. White, supra. The apparent policy behind this article requiring a mandatory continuance is to insure that a party is not deprived of his day in court or his right to properly present his defense when not due to his own fault or delinquency. Brown v. Lykes Brothers Steamship Company, Inc., supra.
In the instant case, American and Owens moved for a continuance on the morning of trial when a subpoenaed witness, whom they alleged was material, failed to appear. The Board opposed the motion. The trial judge at that time neither granted nor denied the motion for continuance, but passed the case and issued a warrant of attachment for the witness.
In the meanwhile, the Board’s attorney left the courtroom for the day and failed to reappear. The Board now complains that the continuance requested by American and Owens was mandatory and that the trial court erred in hearing the merits of the case. We disagree. Once the motion was made by American and Owens and opposed by the Board, the trial court did not immediately rule on the motion. The attorney for the Board did not ascertain the status of the pending motion prior to his departure and did so at the peril of the Board. The Board cannot now complain that the trial court should have granted the motion it opposed and ultimately won.
REIMBURSEMENT FOR WORKER’S COMPENSATION BENEFITS
The Board contends that the trial court erred in awarding American and Owens reimbursement for temporary total disability benefits. The Board reasons that LSA-R.S. 23:1378 enumerates the benefits subject to reimbursement and that temporary total disability benefits are not so enumerated, thereby excluding them from reimbursement. The Board further reasons that American and Owens failed to establish that the employer knew of Payton’s permanent partial disability prior to his second injury. As such, the Board reasons that no reimbursement is due.
At all times pertinent thereto, LSA-R.S. 23:1378 A provided as follows:
An employer operating under the provisions of this Chapter who knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability, as defined in Subsection F hereof, shall be reimbursed from the second injury fund as follows:
(1) If such an employee who has a permanent partial disability incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability, the employer or, if insured, his insurer, in the first instance, shall pay all compensation provided in this Chapter, but the employer or, if insured, his insurer thereafter shall be reimbursed from the second injury fund for all weekly compensation payments payable after the first one hundred and four weeks of payments.
(4)No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee’s preexisting permanent partial disability prior to the subsequent injury.
Under the law applicable at the time of Payton’s second injury, American and Owens are entitled to reimbursement from the *599 second injury fund for all weekly compensation payments payable after the first 104 weeks of payment.
Further the evidence demonstrates that, although Owens did not have knowledge of Payton’s permanent partial disability on the date he was hired, Owens learned of Payton’s disability prior to the second injury on May 1, 1981. On or about July 26, 1979, Payton applied for life insurance through his employer. The application disclosed that Payton had had a disc fusion in his lower back in 1973. The application was signed by Billy P. Owen, Jr. The policy and application were introduced into evidence.
The trial court determined that American and Owens established knowledge of Pay-ton’s prior disability and entitlement to reimbursement of worker’s compensation benefits paid pursuant to Payton’s 'second injury. After carefully reviewing the law in effect at the time of Payton’s second injury and the evidence presented at trial, we find that the trial court properly allowed reimbursement of all weekly compensation payments after the first 104 weeks.
REIMBURSEMENT FOR LUMP SUM SETTLEMENT
The next issue is whether American and Owens are entitled to reimbursement for a lump sum settlement. The Board contends that LSA-R.S. 23:1378 provides the exclusive method for reimbursement by the Board and that this statute does not provide for reimbursement of compromised claims.
LSA-R.S. 23:1378 A provides for reimbursement of “all weekly compensation payments payable after the first one hundred and four weeks of payments.” As this court pointed out in National Union Fire Insurance Company v. Louisiana Workers’ Compensation Second Injury Board, 535 So.2d 474 (La.App. 1st Cir.1988):
Although the statute does not specifically provide for reimbursement of compromised claims, it makes no distinction between compromised and uncompromised claims, and we perceive no valid reason to make such a distinction. The public policy behind allowing reimbursement for second injury claims is to encourage employment of handicapped workers. W. Malone and H. Johnson, Workers’ Compensation Law and Practice, 13 Louisiana Civil Law Treatise § 234, pp. 498-507 (2nd ed. 1980). That public policy is served by allowing payment for compromised (as well as uncompromised) reimbursable claims. Further, it has long been the public policy of this state that the compromise of disputes are highly favored. St. Romain v. Lambert, 521 So.2d 618 (La.App. 1st Cir.), writ denied, 523 So.2d 233 (La.1988). For these reasons, and for the reasons set forth in Parish Government Risk Management Agency v. La. Workmen’s Compensation Second Injury Board, 524 So.2d 267 (La.App. 5th Cir.1988) and Town of Homer v. Louisiana Workers’ Compensation Second Injury Board, 510 So.2d 419 (La.App. 2nd Cir.1987), the fact that an otherwise reimbursable claim is compromised does not preclude its payment by the Board. [535 So.2d at 477]
The fact that a claim is compromised does not make it reimbursable by the Board; the compromised claim must be one for which reimbursement is authorized by LSA-R.S. 23:1378. National Union Fire Insurance Company v. Louisiana Workers’ Compensation Second Injury Board, supra. Reimbursable claims are those for weekly compensation payments payable after the first 104 weeks of payment. LSA-R.S. 23:1378. See Employers National Insurance Company v. Louisiana Workers’ Compensation Second Injury Board, 532 So.2d 535 (La.App. 1st Cir.1988). At this time, LSA-R.S. 23:1378 did not provide for reimbursement of medical expenses.
In the instant case, James Payton and Owens compromised Payton’s claim for future benefits for $75,000.00. The judgment approving the settlement provided as follows:
*600 IT IS ORDERED, ADJUDGED AND DECREED that the compromise settlement proposed by the parties be, and it is, hereby approved, and that there accordingly be judgment herein in favor of the employee and against Owen Plumbing and Heating in the amount of SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($75,000.00) Dollars, in full settlement, compromise and discharge of any and all liability which exists, or which in the future might exist, under the laws of the State of Louisiana by the employer, its employees and anyone for whose conduct the employer may be responsible, and their insurer, including American Motorists Insurance Company to the employee by way of damages, compensation, medical benefits, past, present and future, and for all other amounts, if any, including attorneys’ fees, penalties, interest, court costs and other costs herein, by reason of an accident alleged to have occurred on or about May 1,1981 and any and all others to the date hereof specifically including any injuries and disabilities which may exist but which are at this time unkown (sic) wholly or in part and which may develop or become known in the future, and specifically including any and all medical expenses incurred by the employer or its insurer. (Emphasis added)
There is no evidence of record to establish the proportion of the lump sum settlement attributable to future weekly compensation payments and the proportion attributable to future medical expenses. Therefore, we reverse that portion of the trial court judgment awarding reimbursement for the lump sum settlement and remand this case to the trial court for a determination of the amount of the lump sum settlement attributable to future weekly compensation payments and future medical expenses, respectively, with only the former portion being reimbursable.
CONCLUSION
For the above reasons, the trial court judgment awarding American and Owens reimbursement of weekly compensation benefits is affirmed. The portion of the trial court judgment awarding reimbursement of the lump sum settlement is reversed, and the matter is remanded to the trial court for an allocation of the lump sum settlement between compensation and medical benefits. Costs are to await the final disposition of this matter.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. Payton's prior back surgery resulted in a condition that was presumably a permanent partial disability under LSA-R.S. 23:1378 F(29).

. Payton’s second injury clearly satisfied all requirements of LSA-R.S. 23:1371 A, which provides as follows:
It is the purpose of this part to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers and insurers from excess liability for worker’s compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone.

. In the petition for review, American and Owens allege that they paid temporary total disability benefits of $28,827.28. However, the petition for approval of the compromise between Payton and American and Owens, which was introduced into evidence, shows that American and Owens paid $28,826.40 in compensation benefits.

.An extract of the minutes of October 8, 1987, reveals the following:
This case came on to be heard pursuant to previous assignment. Present, Joseph Clerk, (sic) Jr., Attorney for plaintiff and Oliver Williams, Attorney for defendant. ■ Counsel for plaintiff moved for continuance of this matter on the grounds that a witness, James Payton, did not appear in court this day. Court ordered that this matter be passed on the docket until a civil attachment be issued and the sheriff's office can deliver Mr. Payton to the Courtroom.
Court after having recessed in order for counsel for plaintiff to cause James Payton to appear in court for these proceedings, ordered *597 that the trial of this matter proceed at this time. Present, Joseph Clerk, (sic) Jr., Attorney for plaintiff; Counsel for defendant, Oliver Williams, not present. Evidence was heard and the matter was submitted to the Court; Whereupon Court rendered Judgment as prayed for.

.Following a recess and the appearance of the subpoenaed witness, the trial court resumed the proceedings, stating:
For the record, this matter was called for trial this morning. The Assistant Attorney General was present and ready to go to trial. At that time Mr. Clark of the firm of Hammett, Leake, & Hammett, attorneys for the plaintiff in this case, indicated to the Court that a subpoenaed witness was not present and moved for a continuance. The Court did not grant the continuance but the Court ordered that this matter be passed and that a warrant be issued for the attachment of the witness with instructions to the St. Tammany Parish Sheriff to ferret him out, place him in chains and bring him to this Court. Subsequently the witness appeared. The witness appeared and the attorney for the State of Louisiana, namely the Assistant Attorney General, disappeared.
******
Well, I’m ready to proceed with the trial of this case because there is absolutely no reason whatsoever for these two individuals and the Assistant Attorney General to have concluded that this case was continued.
******
They were not told in Court this case was continued. It was made clear to them this matter was being simply passed and we were going on to other trials to await the coming of the absent but yet subpoenaed witness that we now have in the Courtroom, absent his chains, incidentally.

. On January 22, 1988, the Board filed a petition to annul the November 23, 1987, judgment on the grounds of fraud or ill practices. The record is devoid of any evidence as to the disposition of this petition.

. Although the trial judge determined that American and Owens were also entitled to reimbursement for medical expenses, the formal judgment is silent as to any such award. American and Owens did not appeal or answer the appeal. Therefore, the issue is not properly before this Court.