620 So.2d 445 (1993)
Ernest E. COLEY, Plaintiff-Appellee,
v.
WILSON OIL COMPANY, INC., et al., Defendants-Appellees,
United States Fidelity & Guaranty Insurance Company, Defendant-Appellant.
No. 92-980.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1993.
*447 Jim W. Wiley, for Ernest E. Coley.
Patrick Leo Boothe, for Wilson Oil Company, Inc., et al.
Paul Boudreaux, Jr., for U.S. Fidelity & Guar.
Henry Gregory Walker, Jr., for Commercial Union Ins. Co.
Before DOMENGEAUX, C.J., and GUIDRY, DOUCET, KNOLL and WOODARD, JJ.
GUIDRY, Judge.
This is a workers compensation case. Plaintiff, Ernest Coley, a fuel tank truck driver employed by Wilson Oil Company, brought this action against his employer and its compensation insurer, United States Fidelity and Guaranty Insurance Company (USF & G), alleging that he injured his back on September 28, 1987 while loading his tank truck.
The trial court determined that Coley was involved in an accident on September 28, 1987 which caused his back injury and rendered him permanently and totally disabled. The trial court also concluded that USF & G had arbitrarily and capriciously refused to pay compensation benefits and medical expenses.[1] Accordingly, the trial court rendered judgment in favor of Coley and against USF & G for permanent total disability benefits from the date of injury plus penalties and $5,000 in attorney's fees. It also obligated USF & G to reimburse Commercial Union for $12,344.29 in medical expenses related to the September, 1987 accident. Additionally, the court ordered Coley to reimburse Wilson $37,255.52, representing the salary and compensation benefits Wilson voluntarily paid Coley between October 1, 1987 and March 31, 1989.
USF & G appeals and assigns the following errors:
(1) The trial court's determination that plaintiff was injured by accident on September 28, 1987;
(2) the determination that Coley was permanently and totally disabled;
(3) the denial of an offset for plaintiff's social security disability benefits; and,

*448 (4) the determination that USF & G was arbitrary and capricious and thus liable for penalties and attorney's fees.
For the following reasons, we affirm in part and reverse in part.

FACTS
On September 28, 1987, Coley drove his tractor-trailer tank truck from Wilson's office in Jonesville, Louisiana to the Conoco Refinery in Westlake, Louisiana to fill up his gas tank for scheduled deliveries. In order to connect the gas supply to the tank, Coley was required to lift a 50 to 100 pound "loading arm" and attach it to a valve at the base of his tank. He stated that, while lifting one of the loading arms which had a defective counter balance, he felt a sharp pain in his lower back and dropped to his knees. This incident occurred during the early morning hours and was unwitnessed. Coley had previously injured his lower back in September, 1984 in Vicksburg, Mississippi while attempting the same maneuver. As a result of the 1984 accident, he missed approximately six weeks of work and collected weekly benefits for that period from Commercial Union.
Coley testified that he finished the loading procedure in pain then rested in the drivers' room until the pain eased. He then drove to Olla, Louisiana and unloaded the gas at a bulk plant. According to Coley, the pain became progressively worse as he drove. While in Olla, he called Ivan Bean, Wilson's dispatcher, to report the accident and to request that Bean send a relief driver to Olla. Because no one was available to help him, Coley had to complete the journey to Jonesville. When he arrived there, he required the help of his co-worker, John O'Steen, to alight from his truck. O'Steen helped Coley into the Wilson office where, according to Coley, he informed his boss, Mike Wilson, of the accident and of the intense pain. He also reported the incident to Bean, Phyllis Morgan and Lucy Terry, the office personnel, all of whom corroborated Coley's testimony as to what occurred at the Wilson office.
Mike Wilson testified that, between the 1984 accident and September 28, 1987, Coley drove on a full-time basis without limitation. The only exception was a one week period during 1986 when Coley took off of work because of stiffness in his back. He received his regular salary during this short period. Five days prior to the alleged accident, Coley underwent a physical examination in which no physical abnormalities were detected. The attending physician, Dr. William Coney, certified Coley as fit to drive in accordance with Federal Motor Carrier Safety Regulations.
Wilson stated that Coley reported the accident and resulting injury to him on the date of injury. However, it was acknowledged that, in completing the initial report of worker injury submitted to USF & G and the Office of Workers' Compensation, Wilson related the claim to the 1984 injury and wrote that "claim has been filed before on injury". He explained this as a mistake. Wilson further stated that his company continued to pay Coley his full salary for a relatively short period after the 1987 accident. Thereafter, Coley was paid twothirds of his salary, the equivalent of what Coley was entitled to in workers' compensation benefits.
On the date of his injury, Coley sought treatment from Dr. Joseph Dupuis, a chiropractor. On the way to Dr. Dupuis' office, Coley stopped at the Grab Bag convenience store in Jonesville to inform his wife and mother-in-law of the accident. They both testified that he told them that he hurt his back in Westlake while lifting a loading arm to his tank. According to Dr. Dupuis, Coley informed him that he had been injured while at work. Lumbar spine x-rays revealed a bulging, calcified disc at the L5-S1 level. He informed Coley that the injury was beyond the scope of his expertise and advised Coley to seek treatment from a medical doctor.
On September 30, 1987, Coley was first examined by Dr. Eugene Taylor, an orthopedic surgeon, who had treated him for his 1984 lumbar strain. He complained of lower back and left leg pain. Dr. Taylor testified that Coley did not complain to him about an accidental injury on September 27, 1987, but, to the contrary, specifically *449 informed him that the injury was a continuation of the 1984 injury. Dr. Taylor stated that he had no doubt that Coley believed that it was the same injury. A CT scan revealed a L5-S1 level bone spur protruding into the spinal canal. Dr. Taylor diagnosed lumbar spinal stenosis, a narrowing of the lumbar spinal canal caused by a ruptured annulus fibrosis upon which a bone spur caused by calcium buildup encroaches into the spinal canal. He related this condition to chronic, degenerative disc disease, which he opined most probably began with the 1984 injury. According to Dr. Taylor, stenosis develops over a long period of time (at least six months) and cannot result from recent trauma or injury. He also acknowledged that a calcified disc upon which a bone spur develops is more prone to injury than a normal disc. Dr. Taylor treated Coley conservatively and saw him on several occasions following his initial examination.
In the meantime, Lyman Phillips, USF & G's claims representative, received the initial notice of the claim on October 9, 1987. He then secured a recorded statement from Coley, a transcript of which is included in the record. In that statement, Coley did not state that he was involved in an accident on September 28, 1987. Rather, Coley told Phillips that he had had intermittent pain since the 1984 accident, and he did not know what he did to trigger the pain again. Based mostly on this statement and the accident report, Phillips decided that no separate and new "accident" occurred in 1987. He concluded that Coley's problem was a continuation of the 1984 injury. Phillips, on behalf of USF & G, contacted Commercial Union, Wilson's prior workers' compensation insurer, and requested that it handle the claim since it had provided coverage to Wilson in 1984. Commercial Union decided to provide for Coley's medical benefits, but it declined to pay him weekly benefits.
Apparently unsatisfied with his medical progress under the care of Dr. Taylor, Coley saw a second orthopedic surgeon, Dr. Rifat Nawas, on October 29, 1987. Coley also failed to inform Nawas of any incident that occurred on September 28, 1987. Coley reported to Dr. Nawas on his patient registration form that the injury resulted from a "9-1984" accident in Vicksburg, Mississippi. According to Dr. Nawas, Coley related all of his problems to his 1984 injury. Dr. Nawas did not learn of the alleged 1987 accident until his first deposition was taken in January, 1990. Coley underwent a magnetic resonance imaging (MRI) test which revealed a large disc herniation at the L5 level causing left sciatica, the radiation of pain into the left leg. Coley once again chose conservative treatment, and Dr. Nawas prescribed a lumbosacral corset with pain and anti-inflammatory medication. Coley's condition gradually deteriorated and, by mid-March of 1988, he opted for surgery in an attempt to alleviate his pain. On March 24, 1988, Dr. Nawas performed a discectomy and laminectomy. After surgery, Coley's leg pain lessened dramatically, but his lumbar spine remained stiff. According to Dr. Nawas, all indications during surgery pointed to chronic disc disease as the cause of the herniation. He opined that the 1984 accident was the initiating factor which led to a weakened calcified disc and, eventually, herniation. While he did not expect that Coley would require further surgery, Dr. Nawas stated that he has a 10% to 15% permanent functional impairment in relation to the whole body. He cautioned that this did not mean that Coley was permanently disabled. On the contrary, while Dr. Nawas stated that Coley would never be able to drive a truck or perform heavy manual labor, he released Coley to light duty, sedentary work on June 19, 1989.
Coley filed the present suit for worker's compensation benefits on April 6, 1988, approximately two weeks following his surgery. At the time of trial, he had not yet returned to any work and was enrolled in a vocational training program at the Concordia Technical Institute to become a word processor operator. Coley had interviewed for employment as a service writer with an automobile dealership, but he did not receive a job offer. Coley applied for but was denied Social Security Disability benefits.

*450 "ACCIDENT" REQUIREMENT
USF & G contends that Coley failed to carry his burden of proving that an accident occurred on September 28, 1987.
Generally, under La.R.S. 23:1031, an employee is eligible for and his employer is required to pay compensation benefits when the employee "receives a personal injury by accident arising out of and in the course of his employment". Prior to its amendment by Act 454 of 1989, effective January 1, 1990, La.R.S. 23:1021(1) defined an "accident" as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of injury".
The plaintiff in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. The worker's testimony alone may be sufficient to carry his burden if: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and, (2) the worker's testimony is corroborated by circumstances following the alleged accident. Such corroboration may be provided by the testimony of fellow workers, spouses or friends. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). The evidence is to be viewed in a light most favorable to the claimant. When there is proof of an accident and of a following disability, without an intervening cause, it is presumed that the accident caused the disability. When the performance of usual and customary duties of a worker causes or contributes to a physical breakdown, the statutory requirements of an "accidental" injury are present. Gobert v. PPG Industries, Inc., 534 So.2d 111 (La.App. 3rd Cir.1988), writ denied, 538 So.2d 596 (La.1989) and cases cited therein. Workers' compensation is payable when the occupational accident aggravates or accelerates a pre-existing condition and produces disability. McCauley v. Delta Drilling, 377 So.2d 577 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 1102 (La.1980). Additionally, an employee whose injury is quite predictable due to a pre-existing condition is protected as completely as a normal worker by the worker's compensation laws. Clakeley v. Ochsner Foundation Hospital, 478 So.2d 1335 (La. App. 5th Cir.1985). It is immaterial that the diseased or weakened condition may have eventually produced disability outside the employment situation. Robichaux v. Terrebonne Parish School Board, 426 So.2d 241 (La.App. 1st Cir.1983). The trial court's determination as to whether the worker has discharged his burden of proof is factual in nature and is not to be disturbed on review unless clearly wrong or manifestly erroneous. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly wrong or manifestly erroneous. Bruno, supra.
In the present case, the testimony and documentary evidence conflicted as to whether an accident occurred on September 28, 1987. Although the accident was unwitnessed, Coley's superiors, co-workers, wife and mother-in-law uniformly corroborated that he reported having been injured in Westlake on September 28, 1987 while attempting to lift a loading arm. Contrarily, Coley failed to inform his treating physicians of any 1987 accident and, in fact, initially related all of his symptoms to the 1984 accident and injury. Wilson, his employer, also related Coley's complaints to the 1984 accident in its initial report of injury. Moreover, both Drs. Taylor and Nawas were of the opinion that Coley's injury was caused by chronic and degenerative disc disease initiated by the 1984 accident. Clearly, Coley was working with a preexisting back condition which worsened due to the performance of his usual and customary duties. The trial court was faced with two permissible views of the evidence, which it was required to view in a light most favorable to the claimant, Coley. While the issue is close, we cannot say that the trial court's conclusion, that Coley suffered a work-related injury because of an accident which occurred on September 28, 1987, was manifestly erroneous or clearly wrong. We therefore affirm the determination that an accident occurred.

*451 DISABILITY
The trial court concluded that Coley was permanently and totally disabled and awarded him benefits in accordance with that classification of disability. It found USF & G liable to Coley for $62,094, a compensation rate of $262 per week for 237 weeks. USF & G asserts that, at most, Coley was entitled to temporary total disability benefits from the date of the 1987 accident until his release to light duty work.
The trial court's factual findings as to disability are entitled to great weight and should not be disturbed unless clearly wrong. Louviere v. Jeanerette Mills, 595 So.2d 1224 (La.App. 3rd Cir. 1992). La.R.S. 23:1221 provides disability classifications and payment schedules therefor. La.R.S. 23:1221(2)(c) provides that, in order to be eligible for permanent total disability benefits, the employee must prove "... by clear and convincing evidence, unaided by any presumption of disability that the employee is physically unable to engage in any employment or self employment ...". (emphasis ours). In order to be entitled to permanent total disability benefits, an employee must prove, by clear and convincing evidence, that he is permanently disabled and not simply that his disability is indefinite in duration. Brown v. Knost Roofing Corp., 566 So.2d 1024 (La.App. 3rd Cir.1990). La.R.S. 23:1221(1), in effect on the date of the accident, provided for temporary total disability benefits as follows:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
This statute was amended after the present accident occurred to require that the claimant bear the same burden of proof for temporary total disability as for permanent total disability.
The only evidence of Coley's work capability was presented by the testimony of Dr. Nawas. The record indicates that Dr. Nawas, Coley's treating physician, determined that he was permanently disabled from truck driving and heavy manual labor. In other words, Coley would never be able to return to his former employment. Dr. Nawas stated in his deposition that, as of June 19, 1989, Coley was capable of performing light duty work. He was released to do so on that date. Given this opinion combined with the fact that Coley was undergoing vocational retraining, we conclude that the trial court clearly erred in concluding that Coley was permanently and totally disabled.
Until June 19, 1989, Coley was unable to engage in any self-employment or gainful occupation for wages. Thus, we determine that he was eligible to receive temporary total disability benefits from the date of the accident, September 28, 1987 until June 19, 1989. See National Union Fire Insurance Co. v. Louisiana Workers' Compensation Second Injury Board, 535 So.2d 474 (La.App. 1st Cir.1988). Although Coley was capable of light duty work, the record indicates that, as of the date of trial, he had not been so employed. He had interviewed for one job but did not receive an offer of employment. Pursuant to La. R.S. 23:1221(3), Coley is entitled to supplemental earnings benefits commencing on June 19, 1989, the date of his ineligibility to receive temporary total disability benefits.

SOCIAL SECURITY DISABILITY BENEFITS OFFSET
USF & G alternatively contends that, if we find the trial court correctly determined that Coley was permanently and totally disabled, it is entitled to an offset against permanent total disability benefits for social security disability benefits received by Coley. Because we find that Coley is not entitled to permanent total disability benefits, this assignment of error is rendered moot. See La.R.S. 23:1225.

*452 PENALTIES AND ATTORNEY'S FEES
The trial court assessed penalties and $5,000 attorney's fee against USF & G for what it termed arbitrary and capricious refusal to pay benefits due Coley. La.R.S. 23:1201(E) provides for the imposition of a 12% penalty against an employer or insurer for its failure to pay benefits within the applicable statutory time period. Additionally, La.R.S. 23:1201.2 provides for the imposition of reasonable attorney's fees when the insurer's failure to make payment within sixty days after receipt of notice "... is found to be arbitrary, capricious, or without probable cause".
In Landry v. Central Industries, 592 So.2d 478 (La.App. 3rd Cir.1991), writ denied, 593 So.2d 381 (La.1992), a case involving an employer's failure to pay for recommended medical treatment, this court stated that a worker is not entitled to penalties and attorney's fees where the employer relied upon competent medical advice in deciding not to guarantee payment for the procedure. Likewise, the employee's right to receive compensation benefits and payment for medical expenses will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation and medical expenses were not due. Guidry v. United Furniture Distributors, Inc., 544 So.2d 100 (La. App. 3rd Cir.1989). In the case sub judice, USF & G decided that Coley's disability related to his prior 1984 injury and that Commercial Union was liable therefor. USF & G made that decision based upon the initial report of injury, Coley's own recorded statement, the history provided by him to his treating physicians, and their diagnosis of spinal stenosis caused by a calcified disc, all of which related his complaints to the 1984 injury. Considering these facts and the closeness of the issue as to whether a 1987 accident occurred, USF & G had a reasonable basis to refuse to pay compensation benefits and medical expenses. Accordingly, the trial court's imposition of penalties and attorney's fees was not warranted.

DECREE
For the above and foregoing reasons, we amend the trial court's judgment to reflect that plaintiff is entitled to receive temporary total disability benefits for the period from September 28, 1987 through June 19, 1989. Thereafter, Coley is entitled to receive supplemental earnings benefits calculated in accordance with La.R.S. 23:1221(3). We reverse the trial court's assessment of statutory penalties and attorney's fees against defendant, USF & G, and dismiss plaintiff's demand therefor. In all other respects, the judgment is affirmed.
All costs of these proceedings are to be borne by defendant-appellant, USF & G.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; and RENDERED.
WOODARD, J., dissents and assigns reasons.
KNOLL, J., dissents for the reasons assigned by WOODARD, J.
WOODARD, Judge, dissenting in part.
I agree with the majority except insofar as the majority proposes to reverse the trial court's holding that USF & G was arbitrary and capricious in refusing to pay Coley's medical because USF & G had a reasonable basis to believe that the injury was related to the 1984 accident, which was purportedly based on Coley's statements to that effect to his two doctors and on his initial recorded statement to his employer. For the following reasons I respectfully dissent:
At the very least, defendants' conclusions result from their inadequate investigation. I cannot say that the trial court was clearly wrong in its determination, since all the evidence available to USF & G pointed to an aggravated preexisting condition. The fact that Coley may have told his doctors and employer that the injury he sustained on September 28, 1987 was a continuation of his 1984 injury does not preclude aggravation, or reinjury, which occurred on September 28, 1987, and, therefore, entitlement to benefits from USF & G.
*453 In fact, Wilson stated that Coley reported the accident and resulting injury to him on the day it occurred, September 29, 1987, and that Wilson subsequently mistakenly related this claim to the 1984 injury and wrote "claim has been filed before on injury." Defendants also knew that on September 28, 1987, Coley was in such pain, that he called the company dispatcher, reported the incident, and requested that a relief driver be sent. No one was available, so he finished the job in intense pain. When he arrived at his destination, his coworker had to help him out of his truck and into his boss' office. He told his boss, and Phyllis Morgan and Lucy Terry, the office personnel, what had happened and of his pain. They all attested to same. He sought treatment from his chiropractor on the same day of the injury, September 28, 1987, and informed him that he had been injured while at work. He also called his wife and mother-in-law, on the way to his doctor's office, to let them know.
Had the defendants done a thorough and appropriate job of investigating this matter, they would have discovered the above, which clearly demonstrates that an on the job event on September 28, 1987 caused further injury to plaintiff. Thus, I would vote to affirm the trial court's decision, assessing penalties and attorney fees against USF & G.
NOTES
[1] USF & G did not pay compensation or medical benefits because its investigation of the matter indicated that plaintiff's injury resulted from a September 1984 accident, at which time Wilson's workers' compensation coverage was provided by another carrier, Commercial Union Insurance Company.