658 So.2d 314 (1995)
Richard ROBERTS, Plaintiff-Appellee,
v.
BE & K CONSTRUCTION COMPANY, Defendant-Appellant.
No. 27,116-CA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1995.
*315 Bruce M. Mintz, Monroe, for appellant.
E. Rudolph McIntyre, Jr., Winnsboro, for appellee.
Before MARVIN, NORRIS and WILLIAMS, JJ.
WILLIAMS, Judge.
The claimant, Richard Roberts, filed this worker's compensation action against his former employer, BE & K Construction Company (BE & K) and its worker's compensation insurer, St. Paul Fire & Marine Insurance Company (St. Paul). After a trial, the hearing officer awarded Roberts temporary total benefits from February 23, 1993, costs of recommended back surgery, reimbursement for travel expenses incurred for prior medical treatment, rehabilitation training, a penalty of $750, interest, and attorney's fees of $5,000. From the hearing officer's judgment, the defendants appeal. We affirm.

FACTS
The claimant, Richard Roberts, was a 33-year-old iron worker employed by BE & K in Wisner, Louisiana. On October 19, 1989, while in the course and scope of employment, he fell approximately five feet, landed on his coccyx (tailbone) and suffered a disabling back injury. As a result, the defendants began paying him worker's compensation *316 benefits. The defendants terminated all benefits on July 5, 1991. Subsequently, Roberts filed a disputed claim for compensation.
On September 3, 1992, the date scheduled for the initial hearing on the matter, the parties settled their dispute and entered into a compromise agreement. Pursuant to the agreement, the defendants agreed to pay Roberts past due temporary total benefits which had accrued between the dates of July 5, 1991, and February 10, 1992. In addition, the hearing officer ordered the defendants to pay for Roberts to undergo back surgery recommended by Dr. Kenneth E. Vogel, a neurosurgeon in New Orleans, and to pay temporary total benefits while Roberts was unable to work due to the surgery.
On October 5, 1992, Roberts underwent a lumbar medial branch neurotomy, performed by Dr. Vogel. Approximately three months later, Dr. Vogel reexamined Roberts and wrote a letter stating that Roberts had been discharged from his care with restrictions on lifting, bending and pulling for one year. Dr. Vogel also stated that Roberts needed continued physical therapy and opined that it would take approximately one year from the date of the surgery for Roberts to reach maximum medical improvement.
In February 1993, BE & K offered Roberts a modified job in Mobile, Alabama. Roberts accepted the job and reported to work on February 22, 1993. At that time, BE & K terminated his benefits. After one day of orientation, Roberts began working in a fabrication shop. Within four hours, he complained of unbearable pain and stopped working. At Roberts' request, BE & K discharged him.
On March 12, 1993, Roberts requested that the defendants reinstate his worker's compensation benefits. He sent them a letter written on March 11, 1993, by Dr. Vogel, stating that he was disabled. In this letter, Dr. Vogel stated that it would be a year from the date of surgery before Roberts would reach maximum medical improvement.
Subsequently, BE & K asked Roberts to submit to an independent examination by Dr. Warren Long. On May 27, 1993, Dr. Long reported Roberts' chronic pain and opined that he had an unstable back. Admitting that it was difficult to diagnose an unstable back without surgically placing a clamp on the spine, Dr. Long recommended that Roberts undergo a spine scope, a myelogram, and a CT-scan. Dr. Long did not recommend spinal fusion surgery at that time. However, on June 24, 1993, without having seen Roberts since his May 27, 1993 letter, Dr. Long reported that Roberts could work full duty with a restriction that he not lift more than 60 pounds occasionally. Dr. Long later recanted that opinion because he could not pin point where he had gotten the information he had relied upon in formulating his opinion.
Roberts underwent a lumbar myelogram and CAT scan on July 15, 1993, and a MRI scan on August 19, 1993. The myelogram and CAT scan reports indicated that Roberts had an intramedullary defect at the levels of L2 and L3 through L4 to L5. The MRI report indicated that he had annular disc bulging.
On November 1, 1993, Roberts saw Dr. Baer I. Rambach. Dr. Rambach reviewed Roberts' radiological reports and was concerned about the findings. He recommended that Roberts return to Dr. Vogel for further neurological evaluation. He further stated that he would refer Roberts to Dr. James Zum Brunnen, an expert in the area of spinal surgery, if Dr. Vogel was unable to do anything more neurologically.
Dr. Vogel saw Roberts again on December 2, 1993. He reported that Roberts had limitations of motion, muscle spasms, and lumbar facet pain. He recommended conservative care and another lumbar facet arthrogram and block for the recurrent pain.
During the trial on the merits of this action, the parties stipulated that Roberts was injured in the course and scope of his employment and that his weekly compensation rate was $276. The record was held open for post trial filings. Subsequently, the hearing officer rendered judgment, awarding Roberts temporary total benefits from February 23, 1993, until he recuperated, surgery at the defendants' expense as per the recommendation of Dr. Long, reimbursement for travel expenses incurred for prior medical *317 treatment, rehabilitation training, a penalty of $750,[1] interest, and attorney's fees of $5,000. From the hearing officer's judgment, the defendants appeal.[2]

DISCUSSION

Disability Benefits
The defendants urge that Roberts failed to meet his burden of proving that he was entitled to temporary total benefits. They contend the medical evidence shows that Roberts was able to engage in gainful employment and he is, therefore, not temporarily totally disabled. As a consequence, the defendants assert, the hearing officer erred in awarding temporary total benefits.
Entitlement to temporary total benefits is governed by LSA-R.S. 23:1221(1). At the time of Roberts' injury, that statute provided:
(1) Temporary total. For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee at the time of the injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
Pursuant to this statute, an injured employee has the burden of proving his inability to engage in gainful employment whether or not the same or similar to that in which he was customarily engaged when injured. Bailey v. Zurich American Ins. Co., 503 So.2d 611, 613 (La.App. 4th Cir.1987). The burden of proof must be met by a preponderance of the evidence. Brown v. Georgia Cas. and Sur. Co., 490 So.2d 639, 642 (La.App.2d Cir.1986). The employee's own testimony may be sufficient to discharge this burden. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992).
An employee may prove that he is unable to engage in gainful employment due to substantial pain. See Bailey v. Zurich American Ins. Co., supra at 614. Whether the employee's pain is substantial enough to disable him is a question of fact, Bailey v. Zurich American Ins. Co., supra, which is determined by the totality of the evidence, including both lay and medical testimony. Ross v. St. Paul Fire & Marine Ins. Co., 556 So.2d 891, 894 (La.App.2d Cir.1990). The trial court's factual conclusions are entitled to great weight and may not be reversed absent manifest error. Ross v. St. Paul Fire & Marine Ins. Co., supra. Further, when the employee is disabled and is still undergoing medical testing with an indefinite recovery period, and it appears reasonably certain he will be able to return to gainful employment within the foreseeable future, he is entitled to temporary total benefits. Ross v. St. Paul Fire & Marine Ins. Co., supra at 895.
In the present case, Roberts testified that, because of his pain, he does not know of any jobs that he can perform. He testified that he cannot function with the pain and gets relief only by taking medication and lying on his back with his feet elevated.
Allen Bennet, a safety supervisor for BE & K, testified that he talked to Roberts on February 23, 1993. Bennet stated that Roberts was standing at the time and indicated "he was doing okay." Bennet further testified that within fifteen minutes after that conversation, he again saw Roberts standing. In contrast, James Johnston, the lead foreman who worked closely with Roberts on February 23, 1993, testified that, despite his allowing Roberts to work without any heavy lifting or repeated stooping and bending, Roberts appeared to be in pain and looked miserable. Additionally, the termination record discharging Roberts on February 23, 1993, states that Roberts was unable to work despite reasonable accommodations. Although *318 Paula Whatley, the personnel manager who filled out the termination record, testified that she relied on Roberts' statements to complete the report, nothing in her testimony contradicts Roberts' claim.
The medical evidence presented also corroborates Roberts' claim of substantial pain. On December 2, 1993, Dr. Vogel recommended that Roberts receive continued conservative care and a lumbar facet arthrogram and block for his pain. In addition, he was of the opinion that Roberts had not reached maximum medical improvement.
Dr. Long, the independent medical examiner, testified that Roberts had an unstable back which caused him pain. Although Dr. Long testified that Roberts will never be able to perform the job duties of an iron worker again, he recommended spinal fusion surgery if Roberts could not learn to live with the pain. Dr. Long further testified unequivocally that spinal fusion surgery would alleviate Roberts' leg pain and would decrease his back pain.
The defendants argue that Dr. Long suggested that Roberts attempt to return to work in a corset for a period of time before undergoing additional surgery. They argue that this medical evidence proves Roberts could work and was not temporarily totally disabled. However, a complete review of Dr. Long's testimony indicates that the reason he wanted Roberts to work before undergoing surgery was for testing purposes, to insure that the surgery was necessary. The hearing officer, apparently recognizing the limited purpose for which Dr. Long suggested Roberts return to work, found that Roberts was entitled to temporary total benefits until it could be determined whether a spinal fusion surgery was appropriate and, if so, until he reached maximum medical improvement.
After reviewing the record in its entirety, we find the evidence reasonably supports the hearing officer's conclusion that Roberts was temporarily totally disabled. The evidence shows that Roberts was disabled due to pain and was still undergoing medical testing with an indefinite recovery period. In addition, it appeared reasonably certain he would be able to return to gainful employment within the foreseeable future. Based on the record, we cannot say that the hearing officer's factual determination is clearly wrong.

Medical Benefits
The defendants contend that they are not responsible for paying for Roberts' future spinal fusion surgery. They contend that surgery has not been recommended by any physician and, therefore, the hearing officer erred in awarding surgery at their expense.
As indicated above, the hearing officer's judgment awarding the costs of the surgery was based on Dr. Long's recommendation. Dr. Long stated that spinal fusion surgery would reduce Robert's pain, and he indicated that he would recommend the surgery if Roberts could not learn to live with the pain. Roberts testified that he is willing to submit to the surgery. In written reasons for judgment, the hearing officer implicitly recognized that whether spinal fusion surgery is appropriate is yet to be determined. Accordingly, we find that the hearing officer's judgment, awarding the costs of surgery as per Dr. Long's recommendation, merely confirms Roberts' right to claim future medical expenses when they become necessary and due. See Johnson v. Acadian Contractors and Consultants, Inc., 590 So.2d 623, 626 (La. App. 3d Cir.1991), writ denied, 591 So.2d 700 (La.1992). The hearing officer's judgment is not manifestly erroneous.

Penalties and Attorney's Fees
The defendants contend that the hearing officer erred in assessing penalties and attorney's fees. The defendants assert that they possessed factual and medical evidence which reasonably controverted Roberts' claim to benefits and, therefore, they did not act arbitrarily or capriciously in withholding Roberts' benefits.
An employer or insurer is liable for reasonable attorney's fees if it acted arbitrarily, capriciously or without probable cause in failing or refusing to pay an employee's benefits. LSA-R.S. 23:1201.2. Whether the withholding of benefits is arbitrary, capricious or without probable cause depends on the facts known by the employer or insurer at the time that benefits are denied. Vernon *319 v. Wade Correctional Institute, 26,053 (La.App.2d Cir. 08/19/94), 642 So.2d 684, 691.
Additionally, an employer or insurer is liable for statutory penalties if it volitionally failed to pay benefits without evidence to reasonably controvert the employee's right to such benefits. LSA-R.S. 23:1201(E). To reasonably controvert an employee's right to benefits, the factual and medical information possessed by the employer or insurer must reasonably counter that of the claimant. Vernon v. Wade Correctional Institute, supra.
Whether an employer or insurer should be cast with penalties and attorney fees, is essentially a question of fact and must not be disturbed on appeal absent manifest error. Vernon v. Wade Correctional Institute, supra. The manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The evidence shows that the defendants terminated Roberts' benefits without court approval because Roberts had returned to work and was earning wages equal to or greater than his pre-injury wages. This occurred despite their stipulated agreement to pay temporary total benefits during Roberts' recuperation period. At the time of terminating the benefits, the defendants had knowledge of Dr. Vogel's recommendation of continued conservative care and lumbar rehabilitation physical therapy. The defendants also knew that Dr. Vogel assigned a temporary 10% to 15% whole body medical impairment to Roberts and that Roberts would not reach maximum medical improvement until approximately one year postoperatively. Further, Glenn C. Guilbeau, Roberts' physical therapist, reported on January 25, 1993, that Roberts still required continued physical therapy treatment. After BE & K discharged Roberts from gainful employment, Dr. Vogel reaffirmed in a letter dated March 11, 1993, that Roberts was disabled and had not reached maximum medical improvement. Despite the possession of the above information, the defendants refused to continue paying Roberts' worker's compensation benefits.
Based on the record, we cannot say that the hearing officer's determination that the defendants should be cast with penalties and attorney fees is manifestly erroneous.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. All costs are assessed to the defendants, BE & K Construction Company and St. Paul Fire & Marine Insurance Company.
AFFIRMED.
NOTES
[1] In brief, Roberts argues the hearing officer erred in determining the amount of the penalty assessed. However, Roberts failed to answer this appeal; therefore, we decline to address his argument or amend the judgment in respect to the penalty imposed. LSA-C.C.P. Art. 2133. See Blewer v. Continental Assur. Co., 394 So.2d 842 (La.App. 3d Cir.1981).
[2] The defendants have not assigned as error that portion of the hearing officer's judgment requiring them to provide rehabilitation training or reimbursement for travel expenses.