690 So.2d 769 (1996)
Marshall J. AYMOND, Plaintiff-Appellee,
v.
R.J. JONES & SONS, et al., Defendants-Appellants.
No. 96-443.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1996.
Rehearing Denied February 20, 1997.
*771 Ralph W. Kennedy, Alexandria, for Marshall J. Aymond.
Skipper Maurice Drost, Sulphur, for R.J. Jones & Sons.
Before DOUCET, C.J., and SAUNDERS and AMY, JJ.
AMY, Judge.
This is a worker's compensation case. The hearing officer found that plaintiff, Marshall Aymond, was entitled to temporary total disability benefits, supplemental earnings benefits, continuing medical benefits, statutory penalties of twelve percent on all amounts due, and attorney's fees in the amount of $2,500.00. Defendants, R.J. Jones & Sons, the employer, and its worker's compensation carrier, the Insurance Company for the State of Pennsylvania, appeal the hearing officer's ruling. For the reasons which follow, the decision of the hearing officer is affirmed.

DISCUSSION OF THE RECORD
In mid-April 1994, Marshall Aymond, who was employed by R.J. Jones & Sons as a truck driver, allegedly injured his lower back while loading plywood and "blackout" into a truck. The defendants began paying him worker's compensation benefits from the date of the alleged work-related accident until October 5, 1994. Subsequently, Aymond filed suit against the defendants, requesting reinstatement of benefits, medical expenses, penalties, and attorney's fees.
A hearing on the merits was held on September 28, 1995. At the start of the hearing, the parties stipulated that: (1) Aymond was employed with R.J. Jones & Sons at the time of the alleged work-related accident; (2) temporary total disability [TTD] benefits in the amount of $150.01 per week were paid to Aymond through October 5, 1994; and (3) in lieu of medical testimony, all medical records were admitted jointly and were complete to the best of their knowledge.
On October 12, 1995, the hearing officer ruled that Aymond was entitled to (1) TTD benefits in the amount of $99.66 per week through October 25, 1994; (2) supplemental earnings benefits effective October 26, 1994, until such time defendants provide vocational rehabilitation services to determine job availability and medical recommendations of Dr. Beurlot are followed; (3) continuing medical benefits for treatment which is reasonable and necessary and work related; and, (4) statutory penalties and $2,500.00 in attorney's fees for the defendants' unjustified termination of benefits.
The defendants appeal from that ruling and assert that the hearing officer erred in: (1) finding that Aymond proved there was a compensable work-related accident; (2) finding that Aymond was entitled to TTD benefits; and (3) awarding penalties, attorney's fees and costs. The defendants do not assign *772 as error the award of Supplemental Earnings Benefits or continuing medical benefits.

LAW

WORK-RELATED ACCIDENT
The defendants contend that the hearing officer erred in finding that Aymond sustained his burden of proving that he suffered a work-related accident because they contend that "[t]he evidence presented by claimant leaves the issue of the source or cause of the injury to speculation or conjecture as the objective physical evidence contradicts his story."
Louisiana courts have recognized that La. R.S. 23:1031 requires a worker's compensation claimant to initially establish "`personal injury by accident arising out of and in the course of his employment.'" Bruno v. Harbert International, Inc. 593 So.2d 357, 360 (La.1992).
An accident, for the purpose of worker's compensation, is defined in La.R.S. 23:1021(1) as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
In order for a claimant to be entitled to recover under worker's compensation, he must establish by a preponderance of evidence that an accident occurred on the job site and that an injury was sustained. See, e.g., Garner v. Sheats & Frazier, 95-39 (La. App. 3 Cir. 7/5/95); 663 So.2d 57; Griffin v. South Central Bell, 93-1394 (La.App. 3 Cir. 10/5/94); 645 So.2d 706; Baker v. Conagra Broiler Co., 93-1230 (La.App. 3 Cir. 5/4/94); 640 So.2d 494, writ denied, 94-1435 (La.9/23/94); 642 So.2d 1289; Borel v. Dynamic Offshore Contractors, 626 So.2d 565 (La.App. 3 Cir.1993), writ denied, 93-2993 (La.1/28/94); 630 So.2d 801; Coley v. Wilson Oil Co., Inc., 620 So.2d 445 (La.App. 3 Cir. 1993); Bruno, 593 So.2d 357; Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). "A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." Garner, 663 So.2d at 60. (Citations omitted.) "The evidence is to be viewed in a light most favorable to the claimant. When there is proof of an accident and of a following disability, without an intervening cause, it is presumed that the accident caused the disability." Coley, 620 So.2d at 450. Additionally, a trial court's determination as to whether a compensable injury was suffered is a question of fact and will not be disturbed unless manifestly erroneous or clearly wrong. Dew v. V.I.S., Inc., 95-141 (La.App. 3 Cir. 11/2/95); 664 So.2d 693; Borel, 626 So.2d 565; Coley, 620 So.2d 445; Bruno, 593 So.2d 357.
The manifest error test requires the reviewing court to consider the record as a whole to ascertain whether the trier of fact's findings constituted manifest error. Since the trier of fact's findings are accorded great weight on appeal, the Louisiana Supreme Court has announced a two-part test for appellate courts to reverse under the manifest error standard of review. First, the appellate court must conclude from the record that a reasonable factual basis does not exist for the trier of fact's findings. Second, the appellate court must further determine that the findings were clearly wrong based on the record. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
Dew, 664 So.2d at 695.
Aymond testified that he was employed as a truck driver for R.J. Jones & Sons, and that his duties included loading into a truck the materials that he was to deliver. Aymond stated that he injured his lower back in mid-April 1994 while loading building supplies and material into a truck to be delivered to Jena, Louisiana. He admitted that nobody was present to witness the alleged accident. Aymond further acknowledged that he had previously injured his lower back in November 1993, however, he noted that that injury did not cause him to miss any *773 work. When Aymond was asked to describe his accident, he replied:
[I] picked up three sheets of [plywood and blackout] and I had to raise it up and then swing it, and about ... the fourth time I did it and when I swung like this itI had a very sharp pain and I just dropped. And finally I got up again and I went and told Mike [Aymond's supervisor], I said, Mike, I said, it hit me again.
Aymond was uncertain whether or not he was able to complete the assigned delivery.
Aymond testified that he immediately reported his injury to his supervisor. James Jones, secretary/treasurer for R.J. Jones & Sons, testified that Aymond caused a report, dated April 26, 1994, to be produced by the warehouse supervisor concerning the work-related accident.
Jones testified concerning the post-work-related accident procedures followed at R.J. Jones & Sons. When asked about this accident procedure, Jones replied:
The lady in the front office handles the paperwork of the claim, usually the warehouse supervisor fills out what I call an accident report, that's a preliminary report. And that report authorizes them to go towe were using Cabrini Occupational Center, we're now using Rapides General. When the report is made out they are instructed to go to the Occupation Center for treatment, then we go ahead and finish the paperwork on to the insurance company. The secretary in the front office handles the paper work.
Aymond testified that he went to the emergency room at Rapides General Hospital for treatment on the day of the accident. However, medical records reveal that Aymond was treated in the emergency room at Rapides General Hospital in Alexandria on April 19, 1994. The medical records substantiate that Aymond, on that visit, complained of urinary frequency, urgency and loss of control, as well as intermittent lower back pain. During the emergency room visit, Aymond testified that the emergency room doctor administered a shot because he was unable to lay down on the examining table. Also, several x-rays of Aymond's lumbar spine were taken during this emergency room visit which showed degenerative changes.
On April 26, 1994, Dr. Richard Texada, a urologist, examined Aymond in connection with his urologic problems. In his progress report dated April 26, 1994, Dr. Texada's history reveals that Aymond was "seen in the Rapides Emergency room about a week ago for back pain" and "[a]pparently the patient was said to have injured his back several weeks or more ago at work." Dr. Texada treated Aymond from April 26, 1994 through February 16, 1995.
The hearing officer observed that Aymond testified regarding the incident; Jones corroborated Aymond's testimony that an injury was reported to Aymond's supervisor; Jones further testified that the appropriate accident report was completed regarding the accident; and lastly, no evidence was presented to contradict Aymond's testimony. The hearing officer further found the early medical reports submitted from Rapides General Hospital and Dr. Peter Milder to corroborate that Aymond was injured in a work-related accident in mid-April 1994 while loading plywood and "blackout" into the truck. The hearing officer recognized that Aymond could have been more specific as to the exact date and time of the accident; however, without the introduction of any evidence to illustrate the contrary, this lack of specificity will not render the plaintiff's account of the accident insufficient for purposes of La.R.S. 23:1021(1). The hearing officer determined that Aymond had provided sufficient evidence to support the belief that an accident occurred within the meaning of La. R.S. 23:1021(1). The testimony of a witness is to be accepted as true, even if the witness is a party, unless there exists "circumstances in the record casting suspicion on the reliability of this testimony." West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La. 1979); Bruno, 593 So.2d 357; Holiday, 508 So.2d 1381.
In the case sub judice, although we conclude that there is some evidence which weighs against finding that a work-related accident occurred, we conclude that the hearing officer was not clearly wrong in finding that the testimony and documentary evidence *774 does support, by a preponderance of the evidence, that Aymond suffered a work-related accident. The record supports the finding that symptoms of Aymond's disabling back pain appeared and continuously manifested themselves commencing in mid-April 1994. Therefore, in light of the standard of review to be exercised in this situation, we find no manifest error in the determination that Aymond suffered a work-related accident. Therefore, defendant's first contention is without merit.
TEMPORARY TOTAL DISABILITY BENEFITS
The defendants next contend that the hearing officer erred in finding that Aymond proved, by clear and convincing evidence, entitlement to TTD benefits. The hearing officer determined that Aymond was able to return to work with restrictions, but that he was still entitled to benefits due to unavailability of employment.
Entitlement to TTD benefits is governed by La.R.S. 23:1221(1). La.R.S. 23:1221(1) provides, in part, that:
Compensation shall be paid under this Chapter ... with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
* * * * * *
(c) ... whenever the employee is not engaged in any employment or self-employment... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability ... that the employee is physically unable to engage in any employment or self-employment[.]
A claimant may prove an inability to engage in gainful employment due to substantial pain. Roberts v. BE & K Construction Co., 27,116 (La.App. 2 Cir. 6/28/95); 658 So.2d 314. The presence of pain without proof that this pain is substantial enough to make the pursuit of gainful employment an impossibility is inadequate under La.R.S. 23:1221(1). Schexnyder v. PMB Operators, 93-1178 (La.App. 3 Cir. 5/4/94); 636 So.2d 1146, writ denied, 94-1945 (La.11/4/94); 644 So.2d 1059. Whether the claimant's pain is substantial enough is a question of fact to be determined by the totality of circumstances. Roberts, 658 So.2d 314. Furthermore, the factual conclusions of the trial court are entitled to great weight and will not be reversed absent manifest error. See Roberts, 658 So.2d 314; Harris v. Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, writ denied, 95-1178 (La.6/23/95); 656 So.2d 1020. To meet his burden of proving entitlement to TTD benefits by clear and convincing evidence, a claimant must provide objective medical evidence of the disabling injury. Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132; see also Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
In Fritz, 677 So.2d at 1134, we stated:
However, the issue of disability presents a legal not purely a medical, question which must be determined after considering all of the medical and lay testimony in the record. Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, writ denied, 95-1507 (La.9/22/95); 660 So.2d 481. In other words, the hearing officer determines whether a claimant has met his burden of proving disability only after weighing all the medical and lay testimony. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). Thus, the issue of disability is a factual determination. Creel v. Concordia Electric Cooperative, Inc., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-0577 (La.4/19/96); 671 So.2d 923. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous *775 or clearly wrong. Comeaux, 657 So.2d 449. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. Guidry v. Picadilly Cafeterias, Inc., 95-12 (La.App. 3 Cir. 5/24/95); 657 So.2d 325, writ denied, 95-1601 (La.9/29/95); 660 So.2d 870.
The following evidence was introduced at the hearing.
As stated previously, the emergency room doctor at Rapides General took x-rays of Aymond's back. The medical record from Rapides General provides that "[t]here are mild degenerative changes ... [n]o acute fractures ... noted."
On May 2, 1994, Dr. Peter Milder, a family practitioner, examined Aymond. Dr. Milder testified that he treated Aymond from May 2, 1994 through April 3, 1995. Dr. Milder's notes revealed that Aymond complained of lower back pain after reinjuring himself while lifting plywood at work. In correspondence dated May 12, 1994, Dr. Milder provided the following:
To whom it may concern:
RE: Marshall Aymond
Mr. Aymond injured his back at work while lifting lumber. This should be considered a work injury. He will be off work until further investigations (sic) done or pain starts to reduce.
Dx: Lumbar Disc Protrusion
[signed Dr. Peter Milder]
In later correspondence to R.J. Jones and Sons, dated June 14, 1994, Dr. Milder stated:
RE: Mr. Marshall Aymond.
Mr. Aymond is suffering from Lumbar Strain secondary to work injury.
[signed Dr. Peter Milder]
Additionally, in response to the defendants' request for a report on Aymond's condition, Dr. Milder inscribed the following correspondence dated March 3, 1995:
Marshall Aymond is still a patient of mine. He has ongoing severe back pain [and] requires medication for pain control. He is disabled [and] unable to work. He requires physical therapy. He is unable to work.
[signed Dr. Peter Milder]
Lastly, Dr. Milder, in correspondence dated March 27, 1995, stated:
Mr. Aymond is disabled and has been under my care for over a year.
[signed Dr. Peter Milder]
Furthermore, it should be noted that, during the time Aymond was under the treatment of Dr. Milder, a full series of objective tests were run on Aymond's lumbar spine and a cat scan. On May 2, 1994, Dr. Milder observed greatly reduced rotation and lumbar spasms. On May 3, 1994, approximately one week after the alleged accident, the results of a full series on Aymond's lumbar spine provided that:
There is spurring at all anterior lumbar levels, this being most pronounced at L-1 through L-3. There is a schmorl's node impression on the superior end-plate of L-2. There is mild levoscoliosis centered at L-3. Otherwise unremarkable.
On May 12, 1994, Dr. Milder found the following findings: "Joint and musculoskeletal exam showed tenderness and spasm of the lumbar spine [and] Range of Motion was decreased[.]" A cat scan of Aymond's back, administered on May 16, 1994, provided that: "[t]here are some mild degenerative changes... but no other pertinent/significant findings are evident." On May 20, 1994, Dr. Milder again observed tenderness, spasms, and "reduced ROM neurol." Additionally, as late as March 15, 1995, Dr. Milder, in a medical report, provided the following medical opinion:
His [Aymond's] condition essentially has not changed. He continues to have severe ongoing back pain. There's no improvement in the ROM. He is quite limited because of this.
* * * * * *
Functionally, his limitations are the same as he has very reduced ROM in his lower back. He cannot do any kind of lifting, carrying, or handling heavy objects. Sitting and standing are normal although *776 he may need to have frequent position changes. He is able to handle small objects.
* * * * * *
In summary, he continues to be disabled because of ongoing back pain. All conservative modalities seem to have been tried to no avail. There's no specific physical abnormality that's been detected on any of his tests such as CT scanning, lumbar spine x-rays, etc.
Aymond also sought treatment from Dr. Rayland Beurlot, a specialist in physical medicine and rehabilitation. Dr. Beurlot treated Aymond from July 20, 1994 through December 1, 1994. In his notes, Dr. Beurlot stated that Aymond was injured while "unloading plywood when he felt a pop in his back and onset of pain." Dr. Beurlot further stated that Aymond "is tender to palpation slightly above and medial to left SI region." Throughout the period of treatment by Dr. Beurlot, Aymond received injections into the trigger point in the SI (left and right paraspinal) region to alleviate the pain and discomfort. Aymond reported to Dr. Beurlot that the injections provided relief for approximately two or three days. In his notes dated October 13, 1994, Dr. Beurlot observed "[r]ecurrent trigger point and lumbar pain. No evidence to neurological impingement. MRI reports are negative, however, I do not have the films to have them reviewed up here." Dr. Beurlot further noted that Aymond "still describes the pain as sharp, intermittent and exacerbated by certain movements." On October 25, 1994, Dr. Beurlot noted that Aymond informed him "that he tried to rake some leaves this morning or sweep some leaves off his porch and when he did he immediately began hurting again. On examination he still has tenderness in the usual area over the left paraspinal musculature but not as pronounced as previously." Dr. Beurlot further observed:
Between the MRI and the bone scan I doubt that there is any significant underlying pathology that time would not be expected to help heal and I am therefore returning him to duty with the following restrictions: He is not to rotate the lumbar spine during any of his activities. He may lift only in the straight forward position utilizing proper body mechanics and I do recommend that he continue to wear his lumbar brace.
He is to return to see me in four weeks. I am going to have him enrolled in a work hardening type program to strengthen his lower back now that we have excluded any problems which are felt to be worsened by that.
On October 25, 1994, Dr. Beurlot placed the following restrictions on Aymond:
Marshall Aymond may return to work with restricted duty. He may lift objects that are directly in front of him. He may not do any twisting motions with his low back and may not lift anything which is not directly in front of him.
He may work only 4 hours daily and participate in a work hardening program the remainder of the day.
On December 1, 1994, Dr. Beurlot's recorded impression, provided:
Non-physiologic response to testing as all positions were painful, all motions attempted were painful and no objective findings. Review of his work up to date includes a negative bone scan, a negative MRI except for some degenerative changes in the spine as expected for age and weight. The only thing which has not yet been done is an EMG to look for impingements that somehow might have been missed on MRI. However, I feel that the chance of finding anything significant are very low and will therefore not order that at this time.... I strongly suspect that we will be hearing more about this case in the future. The patient is to return to Dr. Melder (sic) as I do not find anything objective to treat at this time.
On March 30, 1995, Dr. Beurlot made the following statements:
On October 25th, 1994 I saw Mr. Aymond again in follow up.... Bone scan was indicative only of some mild degenerative changes consistent with age. No evident (sic) of focal problem concerning the lumbar spine or pelvis.
* * * * * *

*777 Review of his [Mr. Aymond] work up includes the above mentioned bone scan and normal MRI of the lumbar spine specifically stating no evidence of any abnormal disk bulge, herniation or protrusion and normal hydration of each disk relative to patient's age. No evidence of nerve root displacement or compression and that the spinal canal is of normal volume. CT scan of the lumbar spine which has been obtained prior to the MRI revealed no significant nuclear fragments of the disk. No fracture or destructive processes seen and mild degenerative changes noted (sic) the apophyseal joints. Routine lumbar x-rays were likewise negative except for a Schmorl's node and a very mild scoliosis along with some arthritic spurring.... Having reviewed all of the above as well as Mr. Aymond's presentation during the last clinic visit, I feel that there is a significant amount of symptom magnification present in the absence of any major objective pathology. However, because of the poor cooperation with the examination I cannot set any meaningful restrictions on him. I do feel that he ought to be able to return to some sort of gainful employment and that much of his presentation is unfounded. However, to be absolutely certain of that I would recommend that he undergo psychological testing as well as a formal computerized FCE to assess 1.any inconsistencies in his performance regarding lifting tasks and physical activity and 2. to look for symptom magnification or predisposing psychological factors ... [signed Dr. Rayland Beurlot]
On July 28, 1994, Dr. Clifton Shepard, Jr., an orthopaedic surgeon, examined Aymond. Dr. Shepard noted that Aymond demonstrated "no definite tenderness in the lumbar muscles." Dr. Shepard further noted that no spasm is observed "in the lumbar or thoracic musculature bilaterally [and also] no evidence of contusion or abrasion to the back area." Dr. Shepard opined that the x-rays of the lumbar spine are consistent with what is expected for a man Aymond's age. Results of an MRI, dated September 23, 1994, provided:
Multiple sagittal gradient echo, T2 & Proton density images were obtained with multiple axial gradient echo rephasing. The study shows no evidence of abnormality. There is no evidence of any abnormal disc bulge, herniation or protrusion. All neural foramina are patent. The T2 series demonstrates a normal hydration status of each disc space for the patient's age.
The axial images indicate that the spinal canal is of normal volume at the five lower intervertebral disc spaces with no evidence of nerve root displacement or compression. The bone structures are normal and the surrounding soft tissues are unremarkable.
In a follow-up examination on October 4, 1994, Dr. Shepard determined that Aymond was able to return to "regular activities" and "[t]reatment can be terminated" because of his normal MRI results.
Aymond also sought treatment from a chiropractor, Dr. Karri Gramlich, at Humble Chiropractic Clinic. Dr. Gramlich treated Aymond from May 2, 1995 through June 21, 1995. In correspondence dated May 19, 1995, Dr. Gramlich noted "[c]onsiderable point tenderness, muscle guarding, and muscle spasms ... in the lumbar and sacroiliac joint. Aberrant motion was also noted at L3 and the right and left sacroiliac joint." Dr. Gramlich further noted that "[d]eep tendon reflexes in the lower extremities were below normal ... [and][x]-rays ... revealed deviations from the normal structure." Throughout this period Dr. Gramlich noted subjective pain expressed by Aymond as well as findings of aberrant motion, moderate muscle spasm, tenderness, and guarding.
In the present case, Aymond testified that, because of the pain, he is restrained in his movement and that he has been practically chair-bound in his home. Additionally, he testified that, since sustaining his back injury, he was not able to hunt, fish or do minor work around the house. He testified that he cannot get relief from the pain and that no position eliminates the discomfort.
The hearing officer concluded that Aymond proved entitlement to TTD benefits through October 25, 1994. However, the hearing officer also concluded that the plaintiff had not carried his burden of proof for total temporary disability benefits after October *778 25, 1994, the date on which Dr. Beurlot released him to work four hours a day with restrictions. Aymond admitted that he attempted to return to work once released by Dr. Beurlot and further admitted to several unsuccessful attempts to find alternative employment. Aymond also testified to an inability to bend, stoop, squat, or do minimal tasks such as raking or sweeping leaves without disabling pain. Additionally, prior to the partial release by Dr. Beurlot on October 25, 1994, Aymond was still being treated by multiple physicians who were of the opinion that his condition prohibited him from returning to work. Notwithstanding the contrary opinion expressed by Dr. Shepard on October 5, 1994, the hearing officer found that Dr. Shepard's opinion was inadequate to justify the termination of TTD benefits without further investigation because of the conflicting views of his treating physicians. Dr. Beurlot did not release Aymond to work part-time until October 25, 1994 and Dr. Milder was of the opinion that Aymond was disabled and unable to work as late as March 27, 1995. However, the hearing officer chose not to accept Dr. Milder's diagnosis after October 25, 1994, given the weight of the objective evidence and opinions of the other treating physicians. In support of this conclusion, the hearing officer stated: "Dr. Milder gives no basis for his opinion other than the plaintiff's complaints of ongoing, chronic low back pain. All test results are normal for a man of plaintiff's age." Therefore, Aymond's pain and his doctors' restrictions prohibited him from returning to work or obtaining gainful employment until at least October 25, 1994.
In reviewing the record in its entirety, we find a reasonable evidentiary basis supports the hearing officer's conclusion that Aymond was temporarily totally disabled until October 25, 1994. We cannot say that the hearing officer was clearly wrong in finding that Aymond proved by clear and convincing evidence his entitlement to TTD benefits through October 25, 1994. Therefore, defendants' second contention is without merit.

PENALTIES, ATTORNEY'S FEES AND COURT COSTS
In their final assignment of error, the defendants contend that the hearing officer erred in awarding Aymond statutory penalties, attorney's fees and court costs. A majority of this panel concludes that the award should be affirmed.
Title 23 of the Louisiana Revised Statutes establishes standards to be applied for determining whether a claimant is entitled to statutory penalties and attorney's fees. La.R.S. 23:1201; La.R.S. 23:1201.2; see also Danzey v. Evergreen Presbyterian Ministries, 95-167 (La.App. 3 Cir. 6/7/95); 657 So.2d 491; Penn v. Wal-Mart, Inc., 93-1262 (La.App. 3 Cir. 6/15/94); 638 So.2d 1123, writ denied, 94-1835 (La.10/28/94); 644 So.2d 651.
Statutory penalties are recoverable whenever an employer or insurer fails to timely pay benefits unless the employee's right has been reasonably controverted. La.R.S. 23:1201(F). On the other hand, La.R.S. 23:1201.2 expressly provides that attorney's fees are recoverable if the employer or insurer acted arbitrarily, capriciously or without probable cause in terminating benefits. To determine if an employer acted improperly in discontinuing benefits, the court looks to the facts known by the employer or insurer at the time that benefits are denied. Thomas v. Union Tank Co., 94-778 (La.App. 3 Cir. 12/7/94); 647 So.2d 581. The hearing officer's decision to award penalties and attorney's fees is a question of fact which will not be disturbed unless clearly wrong. See Ferrier v. Jordache-Ditto's, 94-1317 (La. App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100; Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3 Cir.1992).
In the present case, the hearing officer determined that the defendants' termination of TTD benefits on October 5, 1994 based on Dr. Shepard's opinion was improper. The hearing officer determined that "Dr. Shepard's report was an insufficient basis to terminate benefits without further investigation." The hearing officer concluded that Aymond proved entitlement to TTD benefits through October 25, 1994, the time at which he was released to work part-time with restrictions. In the hearing officer's reasons for judgment, she stated that the "[d]efendant[s] chose to ignore all recommendations and opinions which were not favorable to its *779 decision to terminat[e] benefits." The hearing officer then awarded penalties and attorney's fees based solely on the defendants' failure to conduct additional investigation into the claimant's true medical situation. A majority of this panel has concluded that this factual determination is not clearly wrong and has a reasonable basis in the record, especially in view of the employer's continuing duty to determine the claimant's true medical condition. Accordingly, a majority of the members of this panel conclude that the hearing officer's award of statutory penalties and attorney's fees must be affirmed.
The defendants also contend that the hearing officer erred in ordering them to pay the costs of the proceeding. This contention is without merit. The jurisprudence consistently has held that a trier of fact may assess costs of litigation in any equitable manner with the general rule being that the party cast in judgment should be taxed the costs of litigation. See La.Code Civ.P. art. 1920; McConathy v. McConathy, 25,542 (La. App. 2 Cir. 2/23/94); 632 So.2d 1200, writ denied, 94-0750 (La.5/6/94); 637 So.2d 1052. Furthermore, article 1920 of the Louisiana Code of Civil Procedure has been interpreted to grant the trier of fact broad discretion in apportioning costs as it deems equitable under the circumstances. See Doe v. Roman Catholic Church, 94-1476 (La.App. 3 Cir. 5/3/95); 656 So.2d 5, writ denied, 95-2076 (La.11/13/95); 662 So.2d 478. The hearing officer followed the general rule in assessing costs to the defendants after ruling in favor of the plaintiff. Accordingly, the tribunal's decision to award claimant costs is affirmed.

DECREE
The hearing officer's judgment is affirmed. All costs of this appeal are assessed to the defendants-appellants, R.J. Jones & Sons and its worker's compensation carrier, the Insurance Company of the State of Pennsylvania.
AFFIRMED.
AMY, J., author of the majority opinion, adds special dissent from the majority's affirmation of the award of penalties and attorney's fees.
AMY, Judge, specially dissenting from the majority's affirmation of the hearing officer's award of penalties and attorney's fees.
Although I authored the principal opinion in accord with the majority view, because I would reverse the hearing officer's award of statutory penalties and attorney's fees, I add this special dissent on that issue.
The legislature, when enacting La.R.S. 23:1201 and La.R.S. 23:1201.2, intended penalties and attorney's fees, which are penal in nature, to serve as a deterrence for employers and insurers from acting irresponsibly in the handling of a worker's compensation claim. See, e.g., Cormier v. Resthaven Nursing Home, 95-230 (La.App. 3 Cir. 1/17/96); 670 So.2d 233. Nevertheless, the law provides that penalties may only be awarded when the employee's right to benefits has not been reasonably controverted by the employer, and attorney's fees are recoverable only if the employer or insurer has acted arbitrarily, capriciously, or without probable cause in terminating benefits.
In my view of the present case, two questions are relevant in determining whether this was so: (1) whether Dr. Shepard's medical opinion of October 4, 1994 was sufficient to reasonably controvert previous medical opinions; and (2) whether the defendants' reliance on Dr. Shepard's medical opinion alone, without further investigation constituted behavior for which defendant may be assessed with penalties or attorney's fees. Previously, we have held that the termination of benefits will not be considered arbitrary and capricious for purposes of attorney's fees when based on competent medical evidence. See, e.g., Ramsey v. Cash and Carry Foods, Inc., 95-544 (La.App. 3 Cir. 11/2/95); 664 So.2d 511; Thomas, 647 So.2d 581; Fruge v. Gravity Drainage Dist. No. 5, 94-685 (La. App. 3 Cir. 12/7/94); 647 So.2d 561, writ denied, 95-66 (La.3/10/95); 650 So.2d 1180. Also, in these same cases, we held that the medical evidence, which served as the basis for terminating claimant's benefits, was sufficient to reasonably controvert the employee's evidence of disability. Id. In reviewing a determination that the claimant was entitled *780 to statutory penalties, we must conclude that the evidence taken as a whole supports that the employer or "insurer has failed to make payments in the face of sufficient proof of loss." 14 H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION LAW AND PRACTICE § 389, at 410 (3d ed. 1994).
Like the other members of the panel who are in the majority, I too recognize that the defendants have a continuing duty to ascertain a claimant's true medical situation. However, in this case, I find that the defendants were fulfilling this very duty when they caused Aymond to be examined by Dr. Shepard. Dr. Shepard's medical opinion was certainly competent and reasonably controverts any previous medical finding of disability. Dr. Shepherd based his medical opinion on a physical examination and diagnostic testing. Additionally, Dr. Shepard's medical opinion was confirmed a few weeks later when Dr. Beulot released Aymond to work part-time. Therefore, after reviewing the evidence as a whole, I conclude that Dr. Shepard's report served as competent medical evidence which reasonably controverted Aymond's disability. As such, Aymond is not entitled to an award of penalties. See La.R.S. 23:1201(F)(2). Likewise, as previously stated, the termination of benefits will not be considered arbitrary and capricious for the purpose of attorney's fees when based on competent medical evidence, which I find Dr. Shepard's testimony to represent. Accordingly, I conclude that the awards of statutory penalties and attorney's fees were clearly wrong and should be reversed.
As to the majority's disposition affirming the award of penalties and attorney's fees, I respectfully dissent.