942 So.2d 639 (2006)
Cedric V. HUBBARD, Plaintiff-2nd Appellant,
v.
ALLIED BUILDING STORES, INC., Defendant-1st Appellant.
No. 41,534-WCA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
*641 Cook, Yancey, King & Galloway by S. Price Barker, Shreveport, for Defendant-1st Appellant.
Hallack Law Firm by Dennis W. Hallack, West Monroe, for Plaintiff-2nd Appellant.
Before BROWN, STEWART, and LOLLEY, JJ.
BROWN, Chief Judge.
Claimant, Cedric Vashon Hubbard, worked primarily in a janitorial position for Allied Building Stores, Inc. ("ABS") from February 25, 2004, to July 26, 2004. Hubbard alleges that on June 29, 2004, he slipped and fell in an oil spill during the course and scope of employment, resulting in a herniated disk in his back. ABS argued from the outset that Hubbard either faked or staged the accident; alternatively, the employer contended that he greatly exaggerated his injury.
Hubbard filed a claim seeking workers' compensation benefits on October 12, 2004. The trial of this matter was conducted before a Workers' Compensation Judge ("WCJ") in May and August of 2005. The WCJ concluded that the accident could have happened in the manner described by Hubbard and rejected ABS's argument that Hubbard faked or staged the accident. Further, the WCJ denied Hubbard's request for indemnity benefits, penalties, and attorney's fees, but found that he was entitled to receive medical treatment for his injuries. Finally, the WCJ denied ABS's reconventional demand requesting reimbursement based on Hubbard's alleged fraudulent misrepresentations. Both ABS and Hubbard have appealed from this judgment. For the reasons set forth below, we affirm.

Facts
Hubbard was initially employed by ABS as a janitor at a warehouse in Monroe, Louisiana. Hubbard briefly moved to a position in the receiving department in the warehouse; however, after problems arose with respect to his performance, Hubbard moved back to his former janitorial position, a move ABS contends was a demotion.
The accident at issue occurred on the morning of June 29, 2004, eight days after Hubbard's demotion. Hubbard claims to have slipped and fallen in an oil spill in the "Door Shop" area of the warehouse. Hubbard testified that he walked with a trash *642 can and dolly, looking for trash to pick up, past a forklift parked near several shipping pallets. He walked the entire length of the area before turning around to follow the same route in the opposite direction. On his return, Hubbard spotted near the forklift a small pile of sawdust that needed to be swept up and removed. Hubbard claims that as he approached the sawdust, he slipped in an oil spill he did not see, injuring his back.[1]
On the other hand, ABS alleges that Hubbard took a jug of pneumatic oil from the Door Shop, poured the oil on the floor of the warehouse near the forklift, covered the oil partially with shipping pallets, and lay down in the oil, knocking over the trash can and dolly so as to attract attention to himself. In the alternative, ABS argued that Hubbard greatly exaggerated the injuries to his back so as to collect workers' compensation.
Hubbard filed a claim seeking workers' compensation benefits on October 12, 2004. The trial of this matter was conducted before the WCJ on May 19, 2005, August 22, 2005, and August 23, 2005. The WCJ also personally inspected the scene of the accident.
The issues considered at trial included: (1) whether Hubbard was involved in an accident in the course and scope of his employment; (2) whether Hubbard intentionally injured himself and/or actually faked the alleged accident; (3) the nature and extent of Hubbard's disability; (4) Hubbard's entitlement to rehabilitation services; (5) Hubbard's request for penalties and attorney's fees; and (6) whether Hubbard defrauded ABS, entitling the employer to reimbursement of the medical expenses paid on Hubbard's behalf.
On November 3, 2005, the WCJ issued its ruling. The WCJ concluded that the accident happened during the course and scope of claimant's employment and in the manner described by Hubbard. Specifically, the WCJ rejected ABS's argument that Hubbard faked or staged the accident, believing that claimant "does not possess the level of ingenuity required to stage this accident." The WCJ denied Hubbard's request for indemnity benefits, but found that he was entitled to receive medical treatment for his injuries. Hubbard's request for penalties and attorney's fees was denied. Finally, the WCJ denied ABS's reconventional demand requesting reimbursement based on Hubbard's allegedly fraudulent misrepresentations. Both ABS and claimant have appealed from this judgment.

Discussion
Standard of Review
Factual findings in workers' compensation cases are subject to the manifest error rule. Winford v. Conerly Corp., 04-1278 (La.03/11/05), 897 So.2d 560. Under this rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Id.; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). When there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. Id.; Williams v. *643 Saint Gobain Containers, 39,313 (La. App.2d Cir.01/26/05), 893 So.2d 144.
Discrepancies in Testimony
It is a threshold requirement that the claimant in a workers' compensation action establish "a personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A). The claimant bears the burden of proving such a work-related accident by a preponderance of the evidence. Buxton v. Sunland Construction, 34,995 (La.App.2d Cir.08/22/01), 793 So.2d 526. Although Louisiana's workers' compensation statute is often afforded a liberal construction, this burden of proof is not relaxed. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
The Louisiana Supreme Court, in Bruno, supra, laid out the parameters for proving an accident based upon the claimant's testimony alone:
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
Id. at 361. If a claimant's testimony contains discrepancies and inconsistencies, that testimony alone does not meet the burden. Hammock v. Weyerhaeuser, 40,464 (La.App.2d Cir.12/14/05), 917 So.2d 733.
In Buxton, supra, the court held that where objective evidence so contradicts an employee's testimony, or testimony is so internally inconsistent or implausible on its face that a reasonable factfinder would discredit the story, the reviewing court may well find manifest error or clear wrongness even in a credibility determination. Id.
ABS argues that Hubbard's version of events is so internally inconsistent or implausible on its face that it warrants an adverse credibility determination. ABS asserted a myriad of instances where Hubbard's testimony at trial conflicted with his deposition testimony and 40 instances during his deposition and at trial where claimant could not recall details regarding the day of the accident and basic background information. Typical examples of these inconsistencies and lapses in memory are Hubbard's inability to remember whether any tools were on the floor at the time of the accident, whether he drank coffee with a fellow employee that morning, how many disks in his back were diagnosed as herniated, and whether he saw any shipping pallets on the floor that morning.
Hubbard's herniated disk was corroborated by the deposition testimonies of Drs. Daniel Crook, Louis Crook, Temple Douglas, and Gary Lowder. In addition, Dr. Brian Bulloch ordered an MRI for Hubbard's back, and diagnosed Hubbard with having a herniated disk in his lower back.
While Hubbard's deposition and trial testimony contain many discrepancies, none of these discrepancies, by themselves or taken as a whole, are irreconcilable with Hubbard's version of the incident or suggest dishonesty on his part as to this accident. Rather, these discrepancies are easily dismissed as errors common to an imperfect memory. Further, Hubbard's testimony is corroborated by medical evidence which includes several doctors' testimony and the results of an MRI. Accordingly, we find the WCJ did not commit manifest error in finding Hubbard's testimony *644 to be credible and in basing her factual findings on this testimony.
Fraud
It is unlawful for a person to willfully make a false statement or representation for the purpose of obtaining workers' compensation benefits. La. R.S. 23:1208(A). A purported claimant who violates this rule forfeits his right to workers' compensation benefits. La. R.S. 23:1208(E). La. R.S. 23:1208 authorizes forfeiture of benefits upon proof that: (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Howard v. Holyfield Construction, Inc., 36,734 (La. App.2d Cir.03/18/03), 839 So.2d 1277, writ denied, 03-1109 (La.06/06/03), 845 So.2d 1097, appeal after remand, 38,728 (La. App.2d Cir.07/14/04), 878 So.2d 875, writ denied, 04-2303 (La.01/07/05), 891 So.2d 684. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. Id.
Pursuant to La. R.S. 23:1208(D), any person who violates the provisions of La. R.S. 23:1208 may be ordered to make restitution for benefits claimed or payments obtained through fraud. The law is clear that no compensation shall be allowed for an injury caused by the injured employee's willful intention to injure himself. La. R.S. 23:1081(1)(a).
ABS argues that: Hubbard had to see the oil spill on the floor; he simply lay in the oil instead of slipping; he greatly exaggerated the extent of his injuries; and the WCJ was manifestly erroneous in concluding otherwise. Further, ABS points out that there were no other possible sources for the oil on the floor except Hubbard himself, and the WCJ relied on incompetent evidence of "horseplay" and practical jokes in surmising the source of the pool of oil.
While these suggested conclusions may be valid alternatives, it is not in the discretion of this court to replace the WCJ's reasonable findings with equally reasonable conclusions of our own. Even when the appellate court is convinced it would have weighed the evidence differently had it been sitting as trier of fact, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety. Winford, supra.
The WCJ investigated the matter extensively, even making a personal inspection of the accident site, and interpreted the evidence in a reasonable fashion. In determining Hubbard's injuries, the WCJ relied on ample medical evidence in concluding that claimant does indeed suffer from a herniated disk. As to the source of the oil pool, many witnesses testified that oil was regularly on the floor of the Door Shop, and the source of this specific pool of oil does not need to be positively confirmed in this case, especially in light of ABS's inability to identify exactly what type of oil was on the floor of the Door Shop. Accordingly, we can find no manifest error on the part of the WCJ in its determination that Hubbard did not commit fraud.
Indemnity Benefits
Hubbard contends that the WCJ erred when it found that he had not proven that he was unable to return to work because he "was not released from work by a physician" and was therefore not entitled to indemnity benefits.
To justify an award of indemnity benefits, claimant is required to prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment *645 or self-employment. Collins v. Patterson Drilling, 39,668 (La.App. 2d Cir.5/11/05), 902 So.2d 1264. The question of disability is determined by a reference to the totality of the evidence, including both lay and medical testimony, and is ultimately a question of fact. Thomas v. Casino Magic, 39,725 (La.App.2d Cir.05/11/05), 902 So.2d 1283, writ denied, 05-1970 (La.02/03/06), 922 So.2d 1183. The workers' compensation judge's determination that claimant failed to prove an inability to engage in employment cannot be reversed absent a showing of manifest error. Id.
Hubbard notes a North Monroe Medical Center ("NMMC") document bearing a handwritten statement by Dr. Daniel Crook stating "bed rest until rechecked in occupational medicine in a.m. 6/30/04." Further, a June 29, 2004, emergency room note dictated by Dr. Crook stated "[t]he patient was told to remain at bed rest until rechecked by occupational medicine tomorrow morning on June 30, 2004."
In addition, Hubbard relies upon an injury status report from NMMC dated July 2, 2004, which states that Hubbard could return to work as of that day with many nearly unworkable restrictions. An identical report was issued on June 30, 2004. Both reports were authorized by Shane Delman, a family nurse practitioner at NMMC's occupational medicine clinic.
The reports represent only a small portion of the medical evidence considered by the WCJ, and indeed were each issued within four days of the accident, and are not sufficient to carry Hubbard's burden of establishing an entitlement to indemnity benefits.
Penalties and Attorney Fees
Hubbard contends that the WCJ erred in denying him statutory penalties and attorney's fees.
An employer or insurer is liable for reasonable attorney's fees if it acted arbitrarily, capriciously or without probable cause in failing or refusing to pay an employee's benefits. La. R.S. 23:1201.2. Whether the withholding of benefits is arbitrary, capricious or without probable cause depends on the facts known by the employer or insurer at the time that benefits are denied. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir.08/19/94), 642 So.2d 684. Additionally, an employer or insurer is liable for statutory penalties if it volitionally failed to pay benefits without evidence to reasonably controvert the employee's right to such benefits. La. R.S. 23:1201(E). To reasonably controvert an employee's right to benefits, the factual and medical information possessed by the employer or insurer must reasonably counter that of the claimant. Roberts v. BE & K Construction Co., 27,116 (La.App.2d Cir.06/28/95), 658 So.2d 314.
Although workers' compensation statutes are generally liberally construed, the statutory provisions permitting the assessment of penalties and attorney's fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Freeman v. Triad Builders, 39,657 (La.App.2d Cir.05/11/05), 902 So.2d 1220, writ denied, 05-1562 (La.12/16/05), 917 So.2d 1118. Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause, for purposes of workers' compensation statutes relating to the imposition of penalties and awards of attorney fees, depends primarily on the facts known to the employer or insurer at the time of its action; the crucial inquiry is whether the employer has articulable and objective reasons for denying or discontinuing benefits at the time it took that action. Id. The workers' compensation judge is afforded a *646 great deal of discretion in awarding or denying penalties and fees. This discretion is not to be disturbed on appeal absent an abuse of discretion. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.04/07/04), 870 So.2d 515.
Hubbard was terminated by a July 26, 2004, letter which stated, among other things, that ABS suspected Hubbard to have staged or faked the accident. Ms. Lewis, the human resources director for ABS, testified that this suspicion was based in part on "the doctor's reports that we had received to that point." However, Ms. Lewis later testified that as of that time, ABS only had a statement from the EMT.
At trial, however, ABS asserted ample "articulable and objective reasons" for suspecting Hubbard of something less than sincerity, and therefore denying him benefits. The WCJ found that ABS "had a reasonable basis to deny claimant's workers' compensation claim. Said reasonable basis was derived from inconsistent statements by claimant concerning the accident and the extent of his injuries." This being the case, the WCJ did not err in denying claimant's request for penalties and attorney fees.

Conclusion
For the reasons set forth above, the WCJ's judgment is AFFIRMED. Costs of this appeal are to be borne equally by the parties.
NOTES
[1] ABS sent a sample of the oil to the University of Louisiana at Monroe for chemical analysis, but ULM was unable to identify the oil.